# PEOPLE v. CITY AND COUNTY OF SAN FRANCISCO.*

## No. 11,456; November 30, 1887.

### 15 Pac. 747.

**Public Lands — Decree and Patent — Boundaries — Conflicting Titles.**—A decree of the United States circuit court, confirming a Mexican grant of lands, described them as a tract lying above high-water mark, bounded on three sides by the sea, and on the other by a direct line to be so run as to include the required quantity. The patent, issued by virtue of the authority of the decree and in pursuance thereof, granted a tract of land described by courses and distances which, if followed, would include a large tract lying below high-water mark, to which the state claimed title by virtue of act of Congress of September 28, 1850. Held, in an action by the state to quiet its title, that the patent was not conclusive, but that the decree, by virtue of which it was issued, was entitled to be read in connection therewith in determining what lands were conveyed, and that the natural boundaries called for in the decree would overrule the courses and distances of the patent.

**Public Lands—Action to Quiet Title—Pleading.**—In an action to determine an adverse claim to certain lands wherein the state was plaintiff, the complaint alleged that the lands were below high-water mark, and consequently belonged to the plaintiff as swamp lands, by virtue of act of Congress of September 28, 1850; that the defendant, as successor in interest to a Mexican citizen, obtained a decree from the United States circuit court, confirming its title to a tract of land described as included between certain boundaries, and as lying above high-water mark. The patent, issued by virtue of this decree, described a tract of land by courses and distances which, if followed, would include the lands in dispute. Held, that the complaint stated a good cause of action, in that if the allegations were true the plaintiff would be entitled to a decree, and a demurrer thereto should be overruled. ·

APPEAL from Superior Court, City and County of San Francisco; J. F. Sullivan, Judge.

Phillip G. Galpin and E. C. Marshall, attorney general, for appellant; John Lord Love, city and county attorney, and Garber, Thornton & Bishop for respondents.

*For subsequent opinion in bank, see 75 Cal. 388, 17 Pac. 522.

PATERSON, J.—This is an action to determine an adverse claim to one hundred and fifty acres of land, more or less, situated at the northern extremity of the peninsula of San Francisco, and the appeal is from a judgment rendered in favor of the defendant on demurrer to the complaint.

It is alleged in the complaint that the premises in dispute were below ordinary high-water mark at the date of the purchase from Mexico, and ever since have been; that on September 28, 1850, the Congress of the United States passed an act granting to the state the swamp lands within her limits; that the lands in dispute were and are swamp lands, and that the title thereto is in the state; that by the treaty of Guadalupe Hidalgo and the act of March 3, 1851, the United States guaranteed the protection of the property of all Mexican citizens within the state at the date of the conquest; that under said act of March 3, 1851, the city of San Francisco, claiming to be successor in interest of the pueblo of San Francisco, a Mexican citizen, filed a petition before the board of commissioners established by the act for a determination of its claim to four leagues of land on the peninsula of San Francisco; that the board, after due proof, made a decree in the premises; that the cause was afterward appealed to the United States district court for the northern district of California, and was thence transferred to the circuit court of the United States for the circuit of California under a special act of Congress of July 1, 1864; that the circuit court made a final decree adjudicating the case as between the United States and the city of San Francisco, and confirming the claim of the city to the lands therein described, which decree is recited in the amended complaint, and describes the premises confirmed as a "tract situated within the county of San Francisco, and embracing so much of the extreme upper portion of the peninsula above ordinary high-water mark (as the same existed at the date of the conquest of the country, namely, the seventh day of July, 1846) on which the city of San Francisco is situated, as will contain an area of four square leagues, said tract being bounded on the north and east by the bay of San Francisco, on the west by the Pacific Ocean, and on the south by a due east and west line drawn so as to include the area aforesaid, subject to the following deductions," etc. It is then alleged

that the premises in question are not within these boundaries, and that under the laws of Mexico the pueblo could not and did not own land below ordinary high-water mark, nor said premises.

The complaint further avers that, for the purpose of carrying out the decree, a survey was made and approved by the United States surveyor general in 1867–68, of which notice was duly given and advertised as required by statute; that objections were made to the survey by parties interested in lands embraced therein, and affidavits and proofs were taken in support of the survey; that the surveyor general forwarded to the commissioner of the general land office a copy of the survey and objections and proofs, with his opinion thereon; that after a full hearing of the parties interested, the commissioner, in November, 1878, decided in favor of the survey, but allowing an appeal to the Secretary of the Interior; that no appeal was taken by the city, but the military authorities appealed from that part of the decision which related to the Presidio Reservation, within which the premises in dispute were not included; that on the appeal the secretary reversed the commissioner's decision, disapproved the survey, and ordered a new survey, and transmitted his decision, directions, and instructions to the commissioner; that a new survey and plat were therefore ordered by the commissioner, and in December, 1883, a new survey and plat were made by the surveyor general, which included the premises in controversy; that the surveyor general indorsed on the new survey his certificate that the same was made in accordance with the instructions of the commissioner, and then, having signed and sealed the same with his official seal, returned it and the field-notes of the survey to the commissioner of the general land office; "that thereafter a patent in due form of law, based upon the said last-mentioned plat and survey, was issued under the great seal of the United States, and signed by the president thereof, which purported, by virtue of the authority of said decree, and in pursuance thereof, to grant and convey to the city of San Francisco" the land embraced in said last-mentioned survey, and including the premises in controversy. The complaint then alleges the consolidation of the city and county, and its succession to all the rights, title, and interest of the city under the decree, survey, and patent; that under

the patent and otherwise the defendant claims an interest in the premises, and that the patent is a cloud on plaintiff's title. The premises are then described by courses and distances referring to "Alardt and Minto's survey of the pueblo of San Francisco, filed in the office of the surveyor general of the United States, in the city of San Francisco, June 23, 1882."

The only question is, Does the complaint state facts sufficient to constitute a cause of action? Upon her admission into the Union, the state of California became the owner by virtue of her sovereignty of all tide-water lands within her borders, lying below high-water mark, except such as had been disposed of by the Mexican government prior to the treaty of Guadalupe Hidalgo. The territory acquired from Mexico was by the express terms of that treaty taken by the United States subject to the trust of protecting all legal and equitable interests of prior grantees under the former sovereign. The state could not take more than the United States received. Necessarily, therefore, the claim of the state by virtue of her admission and her sovereignty was subordinate to such prior equities, and subject to the power of the federal government to confirm prior Mexican grants, and to locate grants of specific quantities of land within the extreme boundaries of larger tracts: Teschemaker v. Thompson, 18 Cal. 11, 79 Am. Dec. 151; Lux v. Haggin, 69 Cal. 255, 4 Pac. 619, 10 Pac. 674; Le Roy v. Dunkerly, 54 Cal. 452.

There is a distinction between the case of Goodtitle v. Kibbe, 9 How. (U. S.) 471, 13 L. Ed. 220, and cases like the one at bar, which is clearly shown and explained by Chief Justice Field in Teschemaker v. Thompson, supra.

The United States government has exercised the power vested in it, and has, through its courts, and the officers of its land department, attempted to define the boundaries of the four leagues of land to which the city of San Francisco, as successor in interest of the pueblo of San Francisco, a Mexican citizen, was entitled. The court, having jurisdiction to hear and determine the right of this claimant, finally confirmed its claim to four square leagues of land in the extreme end of the peninsula, giving as the boundaries thereof on the west, the north, and the east the natural lines of high-water mark, leaving the southern boundary to be fixed by the surveyor on such

a line as would include between it and the high-water lines
north of it said four square leagues of land.   This, it seems,
the surveyor did not do; but ignoring the natural boundaries,
fixed by the court in its decree for the west, north, and east,
ran his lines into the sea below high-water mark, and included
within his description of the tract by metes and bounds about
one hundred and fifty acres of land belonging to the state.
Following the survey, the patent describes the land by metes
and bounds, and the only questions to be considered—if it be
true that the United States has the power which we have said
it possesses—are, Can the decree be read in connection with
the patent?   And which shall control, the boundaries given
in the decree, or those given in the patent?

It is claimed by respondent that the patent is conclusive
against the state as to location and boundaries of the pueblo
grant, and it must be conclusively presumed in this action
that the description by metes and bounds conforms to the
decree.   We do not think that this contention can be main-
tained in reason or upon authority.   In the cases cited there
was no variance between the decree of confirmation and the
patent.   In Teschemaker v. Thompson, supra, the grant was
assumed to be one of quantity only.   The grant was con-
firmed by the court; and its boundaries as defined in the de-
cree were followed in the patent, which was issued in Novem-
ber, 1857, at which time the federal courts controlled the sur-
veys, and were empowered and expected to make them con-
form to the decree.   The provisions of the act of March 3,
1851, had been regularly followed by the tribunals appointed
to determine the claim and to fix the boundaries of the land.
There was no variance or conflict between the decree and the
patent as to description, and the court there held that the
power of the government to determine the question as to
the validity of the claim, and the extent and boundaries of
the land having been regularly pursued, the patent was con-
clusive, although it appeared that it in fact included lands
lying below high-water mark.   The defense in that case was
that the land belonged to the state of California absolutely,
by virtue of its sovereignty, and that the government of the
United States could not by any proceeding had under the
act of March 3, 1851, deprive the state of its title thereto.

Ward v. Mulford, 32 Cal. 365, was in all respects like Tesche-maker v. Thompson, supra.

Many of the cases cited relate to grants with no specific boundaries whatever. In none of the cases cited by respondent is the question of the power of the officer to issue a patent for land not embraced in the decree considered. That question is important here, because the land in controversy, unlike the public domain of the United States, was not within the jurisdiction of the land department of the government, unless placed there by the decree of confirmation, and because the only unknown or undetermined line is that which bounds the tract on the south side. Upon all other sides, the high-water mark is the monument between the land of the city and that of the state. The sea is a fixed boundary.

As stated before, the government of the United States is in duty bound to carry into effect the stipulations contained in the treaty of Guadalupe Hidalgo; but the power to do so must be exercised in the manner provided by Congress, and it would seem that when Congress vested in the federal courts the power to determine the rights of Mexican claimants, and provided (section 7) that in making the survey the surveyor general should "follow the decree of confirmation as closely as practicable, whenever such decree designates the specific boundaries," and that "it shall be the duty of the commissioner of the general land office to require a substantial compliance with the directions of this section before approving any survey and plat forwarded to him," that the officers of the land department are as to such lands merely auxiliary to the court, with special and limited jurisdiction to carry out its decrees. Such seem to have been the views of this court as expressed in More v. Massini, 37 Cal. 432, where the patent granted certain lands described by metes and bounds (following the survey), but the court said: "The land confirmed is bounded on the south by the seashore, and the land included in the survey will also be held to be bounded on the south by the seashore, unless the calls imperatively demand other boundaries. When the decree of confirmation fixes the exterior bounds of a rancho, whether it is one granted with specific boundaries, or one of a specific quantity within a larger area, the presumption is that the lines of the survey

coincide with, or at least do not extend beyond, the exterior limits or bounds of the decree; for the survey is not an independent act, but is an act performed under the decree, and preparatory to its being carried into effect by a patent. . . . . It appears by the plat that, following the courses and distances of the survey, portions of the sea will be included in the lines of the rancho. This is inconsistent with the calls of the decree of confirmation, which confirms a tract bounded by the seashore.''

In that case the patent did not show upon its face that any land below high-water mark was included in the tract granted, but the fact was shown at the trial by witnesses—surveyors. It is true the patent recited the description of the tract as confirmed by the decree, but the land described in the patent was the tract as surveyed, giving the metes and bounds. The recital in the patent referred to in the complaint herein is sufficient, we think, to connect the decree with the patent as part of the chain of title. Recitals of this character show, and are intended to show, why the patent was issued. They preserve—like recitals in deeds between individuals—the connection in the chain of title; are binding upon the grantee; and the muniments of title referred to become links on which the strength of the title may be tested. Where the deed recites the record of the authority upon which it is made, the record referred to becomes a part of the deed, and the grantee takes notice of its limitations: Cleveland v. Hallett, 6 Cush. (Mass.) 404; Devlin on Deeds, secs. 1000, 1003.

Upon the allegations of the complaint, and the authority of More v. Massini, supra, we think that the plaintiff would be entitled to read the decree in connection with the patent, and if the facts stated be found to be true, would be entitled to a decree quieting title to the lands in controversy. In case of a conflict, courses and distances must yield to monuments. Where watercourses, or mountains, or any other natural objects, are called for in patents, distances must be lengthened or shortened, and courses varied so as to conform to those objects. Mistakes in distances and courses are more probable and more frequent than mistakes as to trees, rivers, mountains, and other objects capable of being clearly and accurately fixed: McIver v. Walker, 9 Cranch (U. S.), 177, 3 L. ed. 694.

Judgment reversed, with directions to overrule the demurrer and allow the defendant to answer.

We concur: Searls, C. J.; Thornton, J.; McKinstry, J.; Sharpstein, J.; McFarland, J.; Temple, J.