[No. 2,569.]

# THOMAS GARDINER *v.* ROBERT MILLER AND JAMES BITHELL.

STATE STATUTES OF LIMITATIONS.—The Statute of Limitations of the several States, are not binding upon the rights of the United States.

LEGAL TITLE TO UNDEFINED MEXICAN GRANT.—The title to a quantity of land granted by Mexico, with undefined boundaries, to be located within designated exterior boundaries, is imperfect in its character, and further action on the part of the Government of the United States, is necessary to attach it to a particular tract.

STATUTE OF LIMITATIONS NOT APPLICABLE, ANTERIOR TO PATENT.—The Statute of Limitations of California, has no application to the title of a patentee of the United States anterior to the issuance of the patent.

ACQUISITION OF FOREIGN TERRITORY BY TREATY.—The United States have the right to acquire foreign territory by treaty, and, after its acquisition, Congress may pass laws to protect the private rights of the inhabitants of the ceded territory, guaranteed to them by the treaty, and such laws are beyond the interference of State authority.

JURISDICTION OF SUPREME COURT OF UNITED STATES.—A controversy, as to the effect of the Statute of Limitations of this State upon a Mexican grant of land, brings into question the construction of the treaty by which

California was ceded to the United States, and is a case which may be re-examined by the Supreme Court of the United States, after a decision by the highest judicial tribunal in this State.

APPEAL from the District Court of the Sixth Judicial District, Sacramento County.

The action was ejectment, in which the defendant had judgment and the plaintiff appealed.

The other facts are stated in the opinion.

*Beatty & Denson,* for Appellant, argued that the title remained in the United States until the patent issued, and cited *Banks* v. *Moreno,* 39 Cal. 233, and *Teschemacher* v. *Thompson,* 18 Cal. 24; and that the Government could not be disseized, and therefore the plaintiff became seized when the patent issued, and cited Angell on Limitation, Sec. 37, and *Fremont* v. *Seals,* 18 Cal. 433.

*John Heard,* for Respondent, argued that the Statute of Limitations ran against an unconfirmed Mexican grant, and did not commence running when the patent issued, and cited *Ferris* v. *Coover,* 10 Cal. 589, and that, as the plaintiff or his grantors could have maintained ejectment at any time for any of the land within the exterior limits of the grant, they had enjoyed the full benefit of the five years limitation. He also argued that the patent was only an admission by the Government that the United States had never had title, and that the grant was valid, and cited *Stark* v. *Barrett,* 15 Cal. 366.

By the Court, WALLACE, C. J.:

The title of the plaintiff to the premises in controversy—a city lot in the city of Sacramento—is derived from Sutter, who held the Mexican grant of June, 1841. The grant was for the quantity of eleven leagues of land, to be thereafter located within exterior boundaries of much greater extent. The survey was finally determined in the Federal Courts in June, 1865; the patent was issued to Sutter in 1866, and this action having been commenced in 1869, the

defendant succeeded in the Court below solely upon the defense of the Statute of Limitations—he appearing to have been in continuous occupation of the lot in controversy since 1858. It is claimed by the counsel for the respondent, in support of the judgment below, that the right of the plaintiff became barred in 1868, by the lapse of the period of five years from the passage of the Act of April 18th, 1863, entitled "an Act to amend an Act defining the time of commencing civil actions, passed April 22d, 1850." (Act 1863, p. 325.) The argument is rested mainly upon the language of the sixth section of the Act, which is as follows: "Section 6. No action for the recovery of real property, or for the recovery of the possession thereof shall be maintained, unless it appear that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises in question within five years before the commencement of such action."

The title of the plaintiff at the date of the passage of the statute under consideration, was under the grant to Sutter, imperfect in its character. The grant had passed a present and immediate interest in the general tract to the extent of the quantity designated; but that quantity had to be segregated, and until the segregation, the title attached to no particular part of the premises. The principal question, therefore, is, whether the statute then commenced to run against the right of the Government, thus to segregate and perfect the grantee's interest, for if it did not, the action having been commenced within five years after the issuance of the patent was well brought, unless, therefore, we are to consider the period between the 18th day of April, 1863, (when the Act was passed), and the 20th day of June, 1866, (when the patent was issued), as forming a part of the five years limited by the statute for the commencement of the action, the plaintiff must prevail. Stated in a different form, the question is whether, in case the patent had not issued until after 1868, or had not issued at all, the possession held by the defendant would have operated, under the Act of 1863, to extinguish the right of the United States and vest a perfect title in the defendant, within the princi-

ple laid down in *Arrington* v. *Liscom*, 34 Cal. 365, and the
other cases which have followed the doctrine of that case.
If the legal title which passed to Sutter by the patent in
June, 1866, was at that time unaffected by the Statute of
Limitations, it operated to vest him with the seizin in law
of the premises, and the action brought within five years
thereafter was not barred.

1. The Statutes of Limitations of the several States are
not binding upon the rights of the United States. (Angell
on Lim. Sec. 39.)

In *Lindsey* v. *The Lessee of Miller*, 6 Peters, 666, the de-
fendant in error relied upon a patent for the premises issued
to his lessor by the United States in the year 1824; the
plaintiffs in error were in possession under a patent for the
premises issued by the commonwealth of Virginia, in 1789,
founded upon an entry and survey made in 1783. In 1784
the territory northwest of the Ohio, in which the premises
were situated, was ceded to the United States, with a res-
ervation in favor of the legal bounties of the Virginia
troops on the continental establishment. It appearing,
however, that the services upon which the entry and survey,
and the patent from the State of Virginia, under which the
plaintiffs in error claimed, had been issued for military ser-
vices performed, not under the continental establishment,
but in the Virginia State line, and, therefore, not within
the reservation contained in the cession to the United
States, it resulted that no title had passed to the plaintiffs
in error. They having been, however, in the uninterrupted
possession of the premises in controversy for upwards of
twenty-one years, requested the Circuit Court to instruct
the jury that such possession upon their part constituted a
bar to the action, which instruction was refused. Upon this
point the Supreme Court of the United States used the fol-
lowing language: "That the possession of the defendants
does not bar the plaintiff's action is a point too clear to
admit of much controversy. It is a well-settled principle,
that the Statute of Limitations does not run against the
State. If a contrary rule were sanctioned, it would only be
necessary for intruders upon the public lands to maintain

their possessions until the Statute of Limitations shall run; and then they would become invested with the title against the Government and all persons claiming under it. In this way the public domain would soon be appropriated by adventurers. Indeed it would be utterly impracticable, by the use of any power within the reach of the Government, to prevent this result. It is only necessary, therefore, to state the case, in order to show the wisdom and propriety of the rule that the statute never operates against the Government." (See also *Gibson* v̇. *Choteau,* 13 Wallace, 92.)

2. I have assumed thus far, that a perfect legal title to these premises was not in Sutter, the plaintiff's grantor, but that, down to June 20th, 1866, this title was to be perfected by the Government of the United States, and that it then for the first time became perfected by the patent of that date. That this was the true condition of the title would seem plain. The Mexican grant, upon which the patent was founded, was not a grant of any tract of land capable of identification, but was only a grant of a quantity of land which was not located, nor were its boundaries defined at the time of the cession of California to the United States by the Mexican Government. The quantity granted was eleven leagues of land, and this quantity was to be thereafter located within the exterior boundaries which were named in the grant, and which were of much greater extent than the quantity granted. It cannot be maintained that a perfect legal title for any portion of the premises passed to Sutter by the grant of 1841, unless it be at the same time maintained that such perfect legal title so acquired by him extended to the exterior lines mentioned in the grant itself—a proposition which finds no support in reason or authority, or in the practice of the Government in dealing with Mexican or Spanish claims for a quantity of land to be located within exterior lines, including a tract greater in extent than the quantity granted. It, therefore, became the political duty of the Government of the United States, under the treaty of cession and the law of nations, as being the successor of the Mexican authority in California, to satisfy the equitable title of Sutter, existing, at the

date of the cession, to a mere quantity of land, without distinctive location or identity; and this satisfaction was to be made, and, in this instance, was made by a relinquishment, upon the part of the United States, to the claimant of their interest in a distinct and defined tract of land within the exterior lines mentioned in the grant, and equal in its extent to the quantity originally granted. By the patent thus issued the Government divested itself of any interest in the tract described, and thereby the legal title to the particular tract became, for the first time, vested in the grantee under Sutter.

3.   But, even if this be otherwise, and if the patent of the United States is to be regarded as a mere credential or certificate of proceedings, had by the authorities of the United States, under the treaty of Guadalupe Hidalgo, concerning the land claim of Sutter, we are still of the opinion that the Statute of Limitations could not affect his title, such as it was, pending an inquiry by the Government as to the validity of the claim. Those proceedings appear to have been had pursuant to the provisions of the Act of March 3d, 1851, "to ascertain and settle the private land claims in the State of California," and of other Acts of Congress amendatory of or in furtherance of the purposes of that Act. If the constitutionality of those Acts of Congress be conceded (and we have not understood it to be questioned), they are "the supreme law of the land, and the Judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." The authority of the Government of the United States to acquire foreign territory by treaty has been asserted and practiced from a very early period in our political history. Said Mr. Chief Justice MARSHALL, delivering the unanimous opinion of the Supreme Court of the United States, in *The American Insurance Company* v. *Canter*, 1 Peters, 511: "The Constitution confers absolutely on the Government of the Union the powers of making war and of making treaties; consequently, that Government possesses the power of acquiring territory either by conquest or by treaty." The power to acquire foreign territory by

treaty involves both the power and the duty to protect the private rights of the inhabitants of the ceded country, so far as such protection may be necessary to discharge the obligations imposed upon the new sovereign by the treaty, and it follows that the legislation of Congress appropriate for that purpose is as clearly beyond and independent of the interference of State authority as is the power to make the treaty itself.

That delay has intervened in the ascertainment and settlement of the land claim of Sutter may be true, but it is also true that the duty cast upon the Government to investigate the claim and ultimately determine its validity, involved, from its very nature, considerable delay; it was, therefore, the delay of the Government, or, if that of the claimant, it was nevertheless a delay permitted to him by the Government, under whose authority, and in pursuance of whose laws, he applied for and ultimately obtained the patent upon which the plaintiff now relies. But whatever the delay, or to whomsoever attributable, is of no consequence upon the question in hand.

It may be conceded that as against the right to commence an action upon an unconfirmed grant, it was competent to set the statute of 1863 in motion from the time of its enactment. To attempt this, however, as against a grant confirmed only subsequently to the passage of the Act, might be in some cases to bar the action based on the patent, even before the patentee had obtained it, and in all cases it would be an interference upon the part of the State with the treaty-making power of the Government, and with the discharge by it of its treaty obligations which would be most mischievous in practice, and wholly without warrant under the Federal Constitution.

These propositions would seem to be too obvious to require argument or authority in their support, and it results that the Statute of Limitations of this State had no application to the title of the patentee anterior to the issuance of the patent upon which he relies for recovery.

Since the foregoing portion of this opinion was prepared, while it was still held under consideration, our attention has

been called to the case of *Henshaw* v. *Bissell*, which was an action of ejectment decided in the Supreme Court of the United States, at its last October term, and in which case views substantially the same as the foregoing were announced in that Court. In that case, Mr. Justice FIELD, in delivering the unanimous opinion of the Court, used the following language:

"But the defendants, to defeat a recovery by the plaintiff, also insist that his right of action is barred by the Statute of Limitations of California,    *    *    *.    The Statute of Limitations of California, passed in 1863, provided in substance that no action for the recovery of real property or its possession should be maintained, unless the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the premises within five years before the commencement of the action, or the property was claimed under title derived from the Spanish or Mexican Governments, which had not been previously confirmed by the United States or their legally constituted authorities; in which latter case the parties were allowed five years after the passage of the Act within which to bring their action. If the title had been thus finally confirmed, the parties were limited to five years after such confirmation. The statute also declared that by final confirmation was meant the patent of the United States, or the final determination of the official survey of the land under the Act of Congress of June 14th, 1860,    *    *    *.    Whilst proceedings were pending before the tribunals of the United States for the confirmation of the claim under the Flugge grant, the statute did not run and could not run against the right of the claimant to the land in controversy. He was obliged by the legislation of Congress to present his claim for investigation and determination, under pain of being held to have abandoned it, and was subjected to numerous and expensive proceedings to establish its validity. As a result of the proceedings required, the government in effect promised, in case his claim was found to be valid, to give him in its patent such evidence of title as would secure to him the possession and enjoyment of his land. The legislation of Congress im-

posing the burden upon the claimant, and promising this benefit to him, is not the subject of any constitutional objection, and it is not, therefore, within the power of the Legislature of a State to defeat its operation. It was adopted by the Government in the discharge of its treaty obligations, with respect to which its authority is absolute and supreme. The action of the Government thereunder, and the rights which perfected title insures to its possessor, cannot be impaired or defeated in any respect by the Statute of Limitations of the State. That statute can only begin to run against the title perfected under the legislation of Congress from the date of its consummation."

The case of *Henshaw* v. *Bissell* arose in the Circuit Court of the United States for the District of California. But it is not, for that circumstance, the less binding upon us as an authoritative decision in the strict sense, controlling the judgment to be given here upon the point. The nature of the present controversy brings into question the construction of the treaty by which California was ceded to the United States as exempting, or claimed to have exempted, the title of the plaintiff from the operation of the Statute of Limitations of this State, prior to the issuance of the patent to Sutter, and is plainly, therefore, a case in this Court which may be re-examined in the Supreme Court of the United States, under the provisions of the twenty-fifth section of the Judiciary Act. Upon the true construction of the treaty, therefore, as announced in the case referred to, the defense interposed cannot avail the defendant, and the judgment must be reversed, and the case remanded, with directions to render judgment for the plaintiff on the findings.

So ordered.

Mr. Justice RHODES dissented.

Mr. Justice NILES did not express an opinion.