Whittlesey vs. Hoppenyan.

WHITTLESEY, Respondent, vs. HOPPENYAN, Appellant.

*August 30 — September 18, 1888.*

*(1, 2) Tax titles: When deed may be executed: Computation of time: Defective record: Limitation of actions. (3) Adverse possession. (4) Public lands: Town-site: Patent to county judge: Division of county: Who to execute trust: Quitclaim by beneficiary before execution of trust: Conveyance by trustee: Recitals: Presumptions.*

1. Lands sold for taxes being subject to redemption at any time within three years from the date of the certificate of sale, a tax deed executed September 4, 1869, upon a tax sale made September 4, 1866, is void.

2. Where a tax deed purports to be attested by two witnesses, an attempted record thereof showing but one witness is ineffectual and does not render available to sustain the deed the limitations contained in secs. 1188, 1210*d*, 1210*e*, R. S.

3. The defendant in ejectment had taken possession of the land, in the spring of 1874, built a fence around it, and trimmed out the underbrush. The fence remained in 1876 and 1877, but in 1880 it had disappeared entirely; and there was no proof that the defendant had any further or other possession of the land until 1884. *Held,* that this was not a continual occupation and possession of the premises for ten years, within the meaning of sec. 4211, R. S.

4. Land occupied as a town-site was patented, under sec. 2387, R. S. of U. S. to S. G., as judge of La Pointe county, in trust for the occu-

pants of such town-site, "and to his successors in trust as aforesaid."
After the entry of the land, but before the patent issued, a part of
La Pointe county, including such town-site, had been organized
into the county of Ashland. Afterwards the name of La Pointe
county was changed to Bayfield county. *Held:*

(1) The trust created was an official one pertaining to the office
of county judge, although the name of the judge was inserted in
the patent; and a conveyance in execution thereof was properly
made by the judge of Ashland county, in which the land was sit-
uated, and not by the judge of Bayfield county.

(2) A quitclaim deed of certain lots in the town-site, executed
by one of the beneficiaries of the trust before he had received a
conveyance from the trustee, would not prevent the trustee from
conveying a valid title to such lots to another beneficiary.

(3) A recital in the conveyance by the judge of Ashland county
that it was made in consideration of the power vested in him by
ch. 95, Laws of 1859 (which prescribed the procedure for executing
the trust), shows that it was intended as an execution of the trust;
and, in the absence of proof to the contrary, it will be presumed
that the proceedings on the part of the trustee, which resulted in
the conveyance, were in accordance with the statute.

APPEAL from the Circuit Court for *Ashland* County.

Ejectment for two lots in the town of Ashland, in the
county of Ashland, according to the recorded plat of such
town. These lots are portions of a larger tract of land,
constituting the town of Ashland, which, on June 23, 1862,
was patented by the United States to Schuyler Goff, as
judge of La Pointe county, "in trust for the several use
and benefit of the occupants of the town of Ashland ac-
cording to their respective interests under said act of May
23, 1844, and to his successors in trust as aforesaid."

It is recited in the patent that the same was executed
pursuant to the act of May 23, 1844, entitled "An act for
the relief of the citizens of towns upon the lands of the
United States, under certain circumstances," which will be
found in 5 U. S. Stats. at Large, 657. Sec. 2387, R. S.
of U. S., contains the material portions of that act. The
section is as follows: "Whenever any portion of the public

lands has been or may be settled upon and occupied as a town-site, not subject to entry under the agricultural pre-emption laws, it is lawful, in case such town be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land-office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated."

The land was entered by Goff in 1856. Three persons only were the occupants of the town-site of Ashland and beneficially interested in such entry and patent in trust. One of these was Asaph Whittlesey, then of Ashland, but later of Bayfield county, where he died in 1883. The other beneficiaries were George Kilbourn and Martin Beaser.

In 1860 La Pointe county was divided, and the county of Ashland, in which the lots in question are situated, was created and organized. Laws of 1860, ch. 211. In 1866 the name of the county of La Pointe was changed to Bayfield. Laws of 1866, ch. 146.

In April, 1872, the county judge of Ashland county deeded to "Asaph Whittlesey, of Ashland county," the lots in controversy. This deed, after reciting the name and office of the grantor, and the name and residence of the grantee, reads as follows: "In consideration of the power vested in him by act of legislature of March 31, 1856, does, by these presents, grant, bargain, sell, and convey to the said party of the second part, his heirs and assigns," etc. The act of 1856 above mentioned is ch. 95 of the General Laws of that year, and is entitled, "An act to authorize the

county judges to perform and discharge the trust specified in an act of Congress approved May 23, 1844, viz." (stating the title of the act of Congress referred to in the patent to Goff). Ch. 95, Laws of 1856, is substantially re-enacted in the Revision of 1858, and stands as secs. 17 to 21, inclusive, of ch. 47, R. S. 1858. As indicated by its title, the act of 1856 prescribes the procedure for executing the trusts created under the act of Congress of May 23, 1844, and for determining the interests of the respective beneficiaries in any patent issued under that act.

On the trial the plaintiff introduced in evidence a tax deed of the lots in controversy, in the usual form, executed by the proper officer to Asaph Whittlesey, of Bayfield county, bearing date December 3, 1866, on a sale of the lots, September 1, 1863, for nonpayment of the taxes assessed thereon; also a conveyance of the same lots, executed in due form by Delia E. Whittlesey to the plaintiff, bearing date January 8, 1885. The plaintiff proved on the trial the death of Asaph Whittlesey in 1883, that Delia E. Whittlesey was his sole heir at law, and that the plaintiff is his widow.

The defendant claimed title to the lots under a tax deed executed by the clerk of the board of supervisors of Ashland county to him September 4, 1869, on a sale of the lots for the nonpayment of the taxes of 1866. The deed recites that such sale was made September 4, in that year. The plaintiff put in evidence the record of such last-mentioned deed, which showed but one attesting witness to the deed.

For the purpose of showing title out of the plaintiff, the defendant put in evidence a quitclaim deed of the same lots, executed by Beaser, another of the beneficiaries in the trust deed above mentioned, and his wife, to one Rodelinska, but did not attempt to connect himself with the title of Rodelinska. The defendant also proved that he paid

the taxes upon said lots for several years after 1869, to the amount, including interest thereon, of $73.27.

The cause was tried without a jury. The court found all the issues for the plaintiff, and ordered judgment accordingly for the plaintiff, upon payment by him to the defendant of the said $73.27, less the costs of the action, within ninety days, and that in default thereof the defendant should have judgment. Judgment was duly entered for the plaintiff in accordance with such direction. The defendant appeals therefrom.

For the appellant there was a brief by *Miles & Shea*, and oral argument by *J. J. Miles* and *E. F. Gleason*.

For the respondent there was a brief by *Tomkins, Merrills & Smith*, and oral argument by *W. M. Tomkins*.

LYON, J.   I. The defendant rests his claim of title to the lots in question solely upon his tax deed of September 4, 1869; and in order to sustain such deed he pleaded the several limitations contained in secs. 1188, 1210*d*, 1210*e*, 4211, 4212, 4215, R. S., and the several acts amendatory thereof. Such tax deed is void on its face, for the reason that it shows a tax sale of the lots on September 4, 1866, and the deed was executed September 4, 1869. *Sprecher v. Wakeley*, 11 Wis. 432; *Lindsay v. Fay*, 25 Wis. 460. The deed could not have been lawfully executed until the expiration of three years after the date of the certificate of sale, and of course that could not bear a date earlier than September 4, 1866. Laws of 1859, ch. 22, secs. 18, 25. The three years did not expire, and no deed on such tax sale could lawfully be issued, before September 5, 1869. The lots were subject to redemption September 4, 1869. *Sprecher v. Wakeley*, 11 Wis. 432, and note (sec. 11); *Lindsay v. Fay*, 25 Wis. 460.

Furthermore, the special limitations upon tax deeds, pleaded by the defendant in support of his deed, all com-

mence to run from the recording of the tax deed.    The tax deed upon which defendant founds his claim of title was never recorded, for it purports to be attested by two witnesses, whereas the attempted record of it shows but one witness. This is not an effectual record of the deed. Hence the limitations contained in secs. 1188, 1210*d*, and 1210*e*, R. S., are not available to sustain the defendant's tax deed.

But the defendant further relies upon the ten years statute of limitations prescribed by sec. 4211, R. S.    Although the deed is void on its face, and was never properly recorded, it is still such an instrument as is contemplated by the latter section. *McMillan v. Wehle*, 55 Wis. 685. Hence, if the defendant was in the continual occupation and possession of the lots in question, or of some part thereof, for ten years, claiming title under his tax deed, he has a good title to the lots by adverse possession.    The proof on this subject is that the defendant took possession of the lots in the spring of 1874, built a fence around them, and trimmed out the underbrush.    The fence remained in 1876 and 1877, but in 1880 it had disappeared entirely; and there is no proof that the defendant had any further or other possession of the lots until 1884.    Very clearly this is not such a continual occupation of the lots for ten years as will establish the defendant's title thereto.

We conclude that the defendant has failed to establish title in himself to the lots in controversy.

II. We are now to inquire whether the plaintiff has proved title to the lots, for it is an elementary rule that the plaintiff in ejectment must recover (if at all) upon the strength of his own title, without regard to the weakness of that of his adversary.

1. The quitclaim deed executed by Beaser and wife to Rodelinska in 1855 is of no significance, because it does not appear that the grantors had any interest in the particular lots in controversy which they could convey and

thereby divest the title of the trustee. True, Beaser was one of the beneficiaries in the trust deed to the county judge, but he could do no act which would prevent the trustee from conveying a valid title to the lots to another beneficiary. We dismiss this conveyance from further consideration.

2. It is claimed the proof fails to show that Asaph Whittlesey, of Ashland county, and Asaph Whittlesey, of Bayfield county, are one and the same person. Hence it is argued that the case fails to show that the ancestor of the grantor of the plaintiff was the beneficiary of the same name in the trust deed. We think the testimony negatives this position, and that it was satisfactorily proved on the trial that such ancestor and such beneficiary were one and the same person.

3. We do not attach any importance to the tax deed of 1866 to Asaph Whittlesey.

4. The next question is whether the county judge of Ashland county became, by the division of La Pointe county and the erection of the county of Ashland, the successor of the county judge of La Pointe county in the trust deed, and as such authorized to convey the lots in controversy. We have no doubt whatever that the trust created by the patent to Schuyler Goff, judge of La Pointe county, in trust, etc., was an official trust, pertaining to the office of county judge, and not a personal one, although the name of the judge is inserted in the patent. *Iowa Co. v. M. P. R. Co.* 24 Wis. 126. No discussion of this proposition is necessary. So the question narrows down to this: Should the conveyance be made by the county judge of Bayfield county, or by the county judge of Ashland county, in which the lots are situated? The statute of the United States, sec. 2387, R. S. of U. S., appoints as the trustee to take a conveyance of the land "the judge of the county court for the county in which such town is situated," and the patent runs to

Schuyler Goff as judge of La Pointe county, "and as the proper corporate authority, in trust for the several use and benefit of the occupants of the town of Ashland according to their respective interests, under said act of May 23, 1844, and to his successors or assigns in trust as aforesaid." Had Ashland county been organized when the entry was made in 1856, the certificate of such entry would have been issued to the county judge of that county, under the act of 1844. Had notice of the creation of that county, and that the town-site of Ashland was within its limits, been given to the proper government officers before the patent was issued, we cannot doubt the patent would have been made to the county judge of Ashland county, because the act of 1844 appoints as trustee in such a case "the judge of the county court for the county in which such town is situated." After 1860, the town-site in question was situated in Ashland county. We perceive no good reason why the mere fact that the patent happened to be made to the judge of La Pointe county should operate to continue that officer as the trustee after the town-site had ceased to be a part of that county. It was the manifest intention of Congress that the trustee should be the judge of the county in which the town-site is situated. Hence we think when the county of Ashland was organized the judge of that county became the trustee of the town-site in question, and is the officer to administer and execute the trust.

5. We are further of the opinion that sufficient appears on the face of the conveyance by the judge of Ashland county to Asaph Whittlesey to show that the same was intended as an execution of the trust. This sufficiently appears by the recital therein that it was made in consideration of the power vested in the grantor by the act of 1856, which prescribed the procedure for executing the same. In the absence of any proof to the contrary, it must be presumed that the proceedings on the part of the trustee,

which resulted in the conveyance to Whittlesey of the lots in controversy, were in accordance with the statute.

We think the case was correctly decided, and must therefore affirm the judgment of the circuit court.

*By the Court.*— Judgment affirmed.

See note to this case in 39 N. W. Rep. 355.— REP.