[No. 13853. In Bank.—May 18, 1891.]

## JASON C. SMITH, RESPONDENT, v. ISABELLA HILL ET AL., APPELLANTS.

TOWN-SITE GRANT — MINING CLAIM — KNOWLEDGE OF VALUE. — Under section 2392 of the Revised Statutes of the United States, providing that no title shall be acquired, under the provisions relating to town sites, "to any mine of gold, silver, cinnabar, or copper, or to any valid mining claim or possession held under existing laws," there must be a paying mine known to exist at the time of the town-site grant, or one which there was good reason to believe then existed, in order to deprive a town-site owner of his land.

ID. — PATENT TO COUNTY JUDGE — CONVEYANCE BY SUPERIOR JUDGE — OFFICIAL TRUST — SUCCESSION. — Under the constitution and laws of the state, making the superior courts successors to the county courts, and clothing the judges of the superior courts with the powers formerly exercised by the county judges, where a town-site patent was issued to a county judge, of lands to be held in trust by him for the use and benefit of the town, the trust created by the patent is an official trust, and the superior court judge, as the successor of the county judge, is authorized to convey the land.

ID. — ACTION TO QUIET TITLE — EVIDENCE — APPLICATION FOR SURVEY OF
MINING CLAIM. — In an action to quiet title, brought by a mining claim-
ant against a claimant under a town-site patent, evidence tending to show
that, seven years prior to the date of the town-site patent, a number of
persons sent to the United States surveyor-general a request for the sur-
vey of the mining claim, one of whom was the grantor of the plaintiff, is
incompetent and immaterial.

APPEAL from a judgment of the Superior Court of
Placer County, and from an order denying a new trial.

The appellants offered in evidence upon the trial,
marked " Ex. A," a certified copy of the application of
M. Dodsworth and others to the United States surveyor-
general for California for an official survey of a certain
mining claim located in Auburn mining district, in
Placer County, and dated August 24, 1872, and also a
certified copy of the official plat of the official survey of
said mine, made pursuant to the said application, marked
" Ex. B." The court sustained an objection of the re-
spondent to the admission of these exhibits, to which
ruling the appellants excepted. The further facts are
stated in the opinion of the court.

*D. W. Spear*, and *Wallace & Prewett*, for Appellants.

*John M. Fulweiler*, for Respondent.

PATERSON, J. — This is an action to quiet title. The
answer denies that the plaintiff is the owner or ever was
entitled to the possession of any lands in block 1, except as
a miner under the mining laws of the United States, and
avers that any right he ever had was lost by reason of his
failure to comply with the provisions of section 2324 of
the Revised Statutes of the United States; alleges that de-
fendant Belle Hill is the owner and entitled to the posses-
sion of the property. In further defense, the defendants
alleged that the lands in controversy are part of section
10, township 12 north, range 8 east, Mount Diablo base
and meridian, and are, and for twenty years last past

have been, mineral lands; that in 1871 the lands were, and ever since have been, generally and well known to contain, and did in fact contain, a valuable mine of gold-bearing quartz, and since said year have been worked as such under valid mining locations, and large quantities of gold have been from time to time extracted therefrom; that on June 1, 1887, and while the lands were open to location as public mineral lands, the defendant Belle Hill duly located the mine and ground as a quartz-mining claim, by posting a notice in due form and filing a copy thereof in the office of the county recorder, as required by the mining customs of the district; that she took possession under her said location, and has ever since, and for more than five years last past, held the same, and has complied with the provisions of said section 2324.

The court found that on April 15, 1879, a patent was issued to J. I. Fitch, county judge of Placer County, for the lands in controversy, among others, to be held by him in trust for the use and benefit of the inhabitants of the town of Auburn; that thereafter the lands were surveyed and platted in blocks and lots, and the lands were described therein as lot 2, block 1, in northwest quarter of said section 10, and were designated as surveyed to and claimed by M. Dodsworth (plaintiff's grantor); that at the time of the issuance of the patent to said county judge there was no mine of gold, silver, cinnabar, or copper therein, or any valid mining claim or possession; that on June 8, 1881, B. F. Myers, judge of the superior court of the county of Placer, as successor of said Fitch, conveyed the land to said Dodsworth, and at that time there was no such mine or mining claim thereon; that on April 18, 1888, said Dodsworth conveyed to plaintiff; that on January 1, 1887, defendant Belle Hill posted a notice of location on the lands as mining lands, and on September 29, 1888, posted an amended notice claiming the lands as mining lands,

copies of which were recorded; that plaintiff and his grantors held the possession of the lands, claiming the same under the town-site patent and the deed from Judge Myers, from April 15, 1879, until the first day of January, 1887; that defendants have no claim to the lands other than through the location and improvement of the land under the mining locations referred to.

The court rendered judgment for the plaintiff. The defendants' motion for a new trial was denied, and they have appealed.

Appellants contend that the lands contained a mine of gold at the time they were patented to Judge Fitch, and therefore no title passed to Dodsworth. In support of this contention they cite section 2392 of the Revised Statutes of the United States. That section reads as follows: "No title shall be acquired under the foregoing provisions of this chapter to any mine of gold, silver, cinnabar, or copper, or to any valid mining claim or possession held under existing laws."

The evidence shows that from 1872 to 1874 some mining was done on the land, but there is nothing to show that on April 15, 1879, when the patent was issued, the land was regarded as valuable for mining purposes. Long prior to that time, mining on the land had ceased because it would not pay. The mine appeared to be worked out.

As the land was not known to be mineral land at the time of the issuance of the patent, and as there was no good reason to believe at that time that the land contained any mine of gold, silver, cinnabar, or copper which would pay to work, it is unnecessary to consider whether the evidence shows the subsequent discovery of a valuable mine on the lands. The term "mine of gold, silver, cinnabar, or copper," as used in the exception found in the act and in the reservation of the patent, means a paying mine known to exist at the time of the grant to the county judge, or one which there was good

reason to believe then existed.  A similar question was presented in *Francoeur* v. *Newhouse*, 40 Fed. Rep. 618; 43 Fed. Rep. 236.  In that case Judge Sawyer held that where a grant to a railroad excepts mineral lands, the term "mineral lands" means land known to be mineral land when the grant took effect, or which there was then good reason to believe was mineral land.  And in a town-site case recently decided by the supreme court of the United States, it was held that the grantee of the county judge could not be deprived of the lands because of the discovery of minerals in them subsequent to the grant.  Justice Field, delivering the opinion of the court, said:—

"It is true, the language of the Revised Statutes touching the acquisition of title to mineral lands within the limits of town sites is very broad.  The declaration that 'no title shall be acquired,' under the provisions relating to such town sites, and the sale of lands therein, 'to any mine of gold, silver, cinnabar, or copper, or to any valid mining claim or possession held under existing laws,' would seem, on first impression, to constitute a reservation of such mines in the lands sold, and of mining claims on them, to the United States; but such is not the necessary meaning of the terms used; in strictness they import only that the provisions by which the title to the land in such town sites is transferred shall not be the means of passing a title also to mines of gold, silver, cinnabar, or copper in the land, or to valid mining claims or possessions thereon.  They are to be read in connection with the clause protecting existing rights to mineral veins, and with the qualification uniformly accompanying exceptions in acts of Congress of mineral lands from grant or sale.  Thus read, they must be held, we think, merely to prohibit the passage of title, under the provisions of the town-site laws, to mines of gold, silver, cinnabar, or copper which are known to exist on the issue of the town-site patent, and to mining

claims and mining possessions in respect to which such proceedings have been taken under the law or the custom of miners, as to render them valid, creating a property right in the holder, and not to prohibit the acquisition, for all time, of mines which then lay buried unknown in the depths of the earth. The exceptions of mineral lands from pre-emption and settlement, and from grants to states for universities and schools, for the construction of public buildings, and in aid of railroads and other works of internal improvement, are not held to exclude all lands in which minerals may be found, but only those where the mineral is in sufficient quantity to add to their richness and to justify expenditure for its extraction, and known to be so at the date of the grant. There are vast tracts of country in the mining states which contain precious metals in small quantities, but not to a sufficient extent to justify the expense of their exploitation. It is not to such lands that the term 'mineral,' in the sense of this statute, is applicable.

"In connection with these views, it is to be borne in mind, also, that the object of the town-site act was to afford relief to the inhabitants of cities and towns upon the public lands, by giving title to the lands occupied by them, and thus induce them to erect suitable buildings for residence and business. Under such protection many towns have grown up on lands which, previously to the patent, were part of the public domain of the United States, with buildings of great value for residence, trade, and manufactures. It would in many instances be a great impediment to the progress of such towns if the titles to the lots occupied by their inhabitants were subject to be overthrown by a subsequent discovery of mineral deposits under their surface. If their title would not protect them against a discovery of mines in them, neither would it protect them against the invasion of their property for the purpose of exploring for

mines.   The temptation to such exploration would be according to the suspected extent of the minerals, and being thus subject to indiscriminate invasion, the land would be, to one having the title, poor and valueless, just in proportion to the supposed richness and abundance of its products.   We do not think that any such results were contemplated by the act of Congress, or that any construction should be given to the provision in question which could lead to such results.   Our conclusion, as already substantially stated, is, that Congress only intended to preserve existing rights to known mines of gold, silver, cinnabar, or copper, and to known mining claims and possessions, against any assertion of title to them by virtue of the conveyances received under the town-site act, and not to leave the titles of purchasers on the town sites to be disturbed by future discoveries." (*Davis* v. *Wiebold*, 139 U. S. 507.)

It is claimed by appellants that Judge Myers had no authority to convey the land to plaintiff, because the constitution of 1879 abolished the county court and the office of county judge; that the superior judge could not lawfully convey the property to plaintiff without express legislation authorizing him to do so.   We do not think this contention is sound.   Under the constitution and laws of this state, the superior courts are the successors of the county courts which existed prior to 1879.   (Const., art. 6, secs. 5, 6; Stats. 1880, pp. 2, 23.)   The judges of the superior courts are clothed with all the powers formerly exercised by the county judges, and as the trust created by the patent to Fitch was an official trust, and in no sense a personal one, Judge Myers became the successor of the county judge, and as such, was authorized to convey the lot.   (*Supervisors* v. *R. R. Co.*, 24 Wis. 126; *Whittlesey* v. *Hoppenvar*, 72 Wis. 140.)

There is no evidence of any valid mining claim or possession at the time of the grant to Dodsworth, and as it was not known to be mineral land, it was not "public

mineral land" when the defendant Belle Hill located thereon. (*Deffeback* v. *Hawke*, 115 U. S. 392.)

The court did not err in excluding exhibits A and B. They were clearly incompetent and immaterial evidence.

Although the appellants' specifications of insufficiency of the evidence to support the findings are not set forth with particularity or in proper form, we have disregarded the objection made by respondent, and considered all of the points made by appellants.

The judgment and order are affirmed.

DE HAVEN, J., SHARPSTEIN, J., HARRISON, J., GAROUTTE, J., McFARLAND, J., and BEATTY, C. J., concurred.