[Civ. No. 1131. Third Appellate District.—August 6, 1913.]

## HELEN HOWARD, Respondent, v. OROVILLE SCHOOL DISTRICT, Appellant.

SCHOOL LANDS—EVIDENCE ESTABLISHING IN ACTION TO QUIET TITLE.— In this action to quiet title to a small parcel of land within the townsite of Oroville, the evidence establishes that the property in controversy was set aside for school purposes, and that the legal title thereto was held by W. S. Safford, as county judge, in trust for the Oroville school district.

ID.—TITLE IN JUDGE OF SUPERIOR COURT—DUTY TO CONVEY TO SCHOOL DISTRICT.—It was the duty of the county judge to make a conveyance of the property to the school district (Stats. 1867–8, p. 692). But he having failed to perform his duty, his successor in office, the judge of the superior court, became the holder of the legal title in trust, and it is proper for the school district to bring an action against him as such trustee to have the legal title vested as a matter of record in the holder of the equitable interest.

ID.—REMEDY TO COMPEL CONVEYANCE BY JUDGE.—As it is the ministerial duty of the judge of the superior court to execute the conveyance, mandate, strictly speaking, is probably the proper remedy, but the decree of the court in a suit to quiet title has the same effect.

ID.—ADVERSE POSSESSION—ACQUISITION OF TITLE TO PUBLIC PROPERTY. Title to the property by adverse possession could not be acquired by an individual while the land was held by the government, nor afterward when it was held by the judge in trust for the school district.

APPEAL from a judgment of the Superior Court of Butte County and from an order refusing a new trial. K. S. Mahon, Judge presiding.

The facts are stated in the opinion of the court.

A. F. Jones, and Geo. F. Jones, for Appellant.

Geo. E. Gardner, for Respondent.

BURNETT, J.—The action was brought to quiet title to a small parcel of land within the townsite of Oroville described in the complaint as "situated on Bird Street adjoining the water-ditch and the Oroville school property on the west, and being a strip of land, or part of lot numbered eight in block number twenty-five and about forty feet in width, in back,

and fifteen feet in front, running along said ditch north and south, as laid down in the official original map of said town of Oroville, now on file in the recorder's office of Butte County, state of California." The description, thus given, is

SCALE—One foot to the inch.

apparently quite indefinite as the length of the lot and the eastern boundary line are not fixed. The reference to the original map, however, might enable a surveyor to identify the property and to locate it upon the ground. Said map, though, does not appear in the record and the one which is presented purports to be "a Map of Block 17 of Oroville from accurate survey by Wm. Edmunds" and bears the indorsement: "Filed as of record January 22nd, 1872, at request of W. S. Safford, County Judge of Butte County. W. H. Chappell, County Recorder, Butte County." It is conceded that the disputed strip is exhibited on said map and the vital controversy is as to whether it is a part of lot No. 3 or lot No. 4. That the discussion may be easily understood, the said map is reproduced and the parcel in litigation we have designated "Disputed."

Respondent contends "that lot No. eight of block No. twenty-five was the original lot and block as made by the map of 1855, which was at that time the original official map of said town of Oroville; and that subsequently the Edmunds map was made and filed of record, which takes in and made the property here in dispute part of lot No. three (3) of block No. seventeen (17), and it being the same identical property described as lot No. eight in block No. twenty-five as platted by the original map of 1855 and described by the Edmunds map as being part of lot No. three of block No. seventeen, and as a matter of fact while the two maps described the property differently it is the same identical property here in dispute and being the same property as described in the original deed to Helen Howard, plaintiff, and her predecessors." We may accept this as fairly explanatory of respondent's position, and, the suggested substitution of the Edmunds map having been made, it may be assumed that the disputed strip is susceptible of identification.

Defendant, in addition to its answer, filed a cross-complaint in which it was alleged that, on the first day of June, 1872, the United States, by letters patent bearing said date, issued its patent under and by virtue of the act of Congress passed therefor, and conveyed to W. S. Safford the townsite of the town of Oroville in trust for the inhabitants of said town who were entitled to the various plats or parcels of land described

in said townsite, and, in trust for the Oroville school district, such parts of the land described in said patent as the people of the town of Oroville were not entitled to by private ownership, which said patent was recorded, on March 13, 1873, in book A of patents, page 357, Butte County records, "reference to which is hereby had, and the same made a part thereof." "That for the purpose of securing the execution of said patent by the United States of the townsite of Oroville an official survey was made thereof by one William Edmunds, and an official map thereof made which said official map with the field notes of said survey was filed in the office of the county recorder of the county of Butte, state of California the 22nd day of January, 1872."

Then follows a detailed description of lot number four in block seventeen as shown by said official map, and the cross-complaint proceeds: "That at the time said survey was made by said William Edmunds said lot No. four of block No. seventeen and the whole thereof had been set aside for public school purposes by Oroville school district, and the same had been prior thereto, was then and ever since has been, in possession of said Oroville school district, and the whole thereof was and ever since has been used by said Oroville school district for school purposes as aforesaid."

It is further alleged that, in an action brought in the superior court by said school district against John C. Gray as superior judge, being the successor in office to said W. S. Safford as trustee to said lands belonging to said school district and described in said patent, a judgment was rendered, on March 19, 1902, that plaintiff was the owner of said lands and that "all adverse claims of the defendant and all persons claiming or to claim said premises or any part thereof through, by or under the defendant, and all claims of the people of Oroville, are hereby adjudged to be invalid and groundless and that plaintiff be and it is hereby adjudged to be the true owner of the lands described in the complaint and hereinafter described and the whole thereof is adjudged to be quieted against all claims or demands of the defendant. . . . Said premises are situated in the county of Butte, state of California, and described as and being lot number four of block number seventeen of the town of Oroville, according to

the official map thereof filed as of record in the office of the county recorder of Butte County, January 22nd, 1872.''

Plaintiff, in her answer to the said cross-complaint, specifically admits the foregoing allegations in reference to the patent to W. S. Safford and the official survey and map of William Edmunds and that ''certain lot number four in block number 17 had been set aside for school purposes by Oroville school district, but that said part or parcel of land so set aside for said Oroville school district does not and never did include the property here in dispute.''

An inspection of said map shows clearly enough that the disputed strip is no part of lot number three, but, on the contrary, is included within the exterior boundaries of lot No. four as thus platted by Mr. Edmunds.

If the said ''Ophir ditch'' had been considered and determined as the western boundary line of lot No. three and the eastern boundary of lot No. four the map would not contain the line just east of said ditch that is drawn perpendicularly from Bird Street to the southern boundary of lot No. three. The fact is apparent that lot No. three is substantially a square like lots one and two and not the irregular parcel that the disputed strip would make it.

If the map created any doubt as to this it could not remain after an examination of the field notes of the survey made by Mr Edmunds. They call for a fence as the division line between lots three and four about twelve feet east of the east bank of said ditch on the south side of Bird Street.

In addition, we have the testimony of said B. L. McCoy, the former county surveyor of Butte County, as follows: ''I know the property in dispute in this action. I know block seventeen of the city of Oroville, and in January, 1901, I made a survey of the exterior boundaries of lot four of block seventeen. . . . On the Edmunds map lot four takes in all the disputed property. . . . I made the survey for the purpose of finding the boundaries of the school house property in order that they might construct a fence around and outside of what property they owned. I pointed out the lines of the survey and a fence was put there in accordance with that survey. The east point of that fence was some twelve feet east of the east bank of the old Ophir ditch and it coincides with the line between lot three and lot four.''

The record contains no evidence to the contrary, and it must be deemed settled beyond peradventure that the disputed strip is a part of said lot four of block seventeen as shown upon the Edmunds map.

This evidence, therefore, in connection with said admission in the answer to the cross-complaint leads irresistibly to the conclusion that the property here in controversy was set aside for school purposes as alleged in the cross-complaint and that the legal title thereto was held by said W. S. Safford as county judge in trust for said school district. It was his duty under the law to make the proper conveyance to the district. Section 16 of the Townsite Act, approved March 30, 1868 (Stats. 1867-8, p. 692), provides that "All school lots and parcels of land reserved for school purposes as aforesaid, by order of the county judge, shall be conveyed to the school trustees of the school district in which such town is situate without costs or charge of any kind whatever."

Judge Safford, having failed to perform his duty, his successor in office, the judge of the superior court (*Smith* v. *Hill*, 89 Cal. 122, [26 Pac. 644]) was the holder of the legal title in trust for said purpose and it was proper for the school district to bring an action against him as said trustee to have the legal title vested as a matter of record in the holder of the equitable interest. "The title belongs to the successor in office of the county judge and he alone can convey the legal title." (*Wheeler* v. *Wade*, 1 Colo. App. 66, [27 Pac. 719]; *Webber* v. *Petty*, 2 Colo. App. 63, [29 Pac. 1016]; *Rice* v. *Goodwin*, 2 Colo. App. 267, [30 Pac. 330].)

As it was the ministerial duty of the judge of the superior court to execute the conveyance, mandate, strictly speaking, was probably the proper remedy, but the decree of the court had the same effect, and it is quite obvious, besides, that plaintiff is in no position to question it. It is equally clear that under the admitted facts the trustee was the only necessary party defendant and it is entirely immaterial that plaintiff herein or her predecessor in interest was not joined in said action.

It may be observed, also, that if plaintiff or her grantor desired to claim any portion of said lot four, sections 8 and 10 of said act of 1868 provided that such claimant should present to the county judge within six months after the plat shall

have been filed in the office of the county recorder his affidavit concisely stating the facts constituting the possession or right of possession of the claimant, to which should be attached a copy of so much of the plat of said townsite as was necessary to fully exhibit the particular lot so claimed, and should make a certain payment to the said county judge, who thereupon should issue to such claimant a certificate containing a description of the lot or parcel of land claimed, and setting forth the amounts paid thereon by such claimant. At the expiration of six months, if no adverse claim were filed, it was made the duty of said judge to convey said property to said claimant.

Conceding, for the sake of argument, that a lot designated in said plat as set apart to school purposes might be made subject to this provision, it is sufficient to say that no such claim was made to any portion of said lot four. The fact is, indeed, that plaintiff's grantor claimed only lot No. three, and the said Safford, as county judge, on the twenty-third day of June, 1873, in accordance with the terms of said act, executed to Amos Howard a deed reciting in appropriate phraseology the claim of said Howard and his payment of the requisite sum of money and the fact of the proper certificate having been issued and concluding that, "Whereas, six months have elapsed since the issuance of said certificate and no adverse claim has been filed in the mean time, I, W. S. Safford, as county judge aforesaid, in pursuance of the authority vested in me by law, have bargained, sold and conveyed and by these presents do bargain, sell and convey unto said Amos Howard, his heirs, and assigns, forever, the following described real estate, situated in said town of Oroville, to wit: That certain lot or parcel of land known and described on the official plat of the townsite of Oroville as lot numbered three in block numbered seventeen." This deed and one from Amos Howard to plaintiff dated September 29, 1906, and also conveying "lot three of block seventeen as per the official map of the town of Oroville" constitute the only link for any possible connection of plaintiff by record with the paramount source of title to the parcel in dispute; but, as we have seen, they are fatally defective here, as they do not purport to convey any portion of lot number four.

A certain deed of March 7, 1870, from Louis Carpeneto and his wife, Maria Carpeneto, to Amos Howard of a certain lot of land designated as a part of lot number eight in block number twenty-five as laid down in the original map of said town of Oroville, if we concede that it covers the land in dispute, furnishes no support to plaintiff's claim, as it is not shown that the grantors therein had any interest to convey, and any possible effect that it might have in favor of plaintiff's claim is nullified by the admission in the pleadings and by the fact that, two years after this deed was made, the land was legally patented to W. S. Safford, county judge, in trust as aforesaid.

Neither can it be maintained that respondent acquired a title by prescription. In this connection two periods and conditions relating to the land must be considered. Prior to 1872 the title to the land was in the United States, and, of course, adverse possession would not avail against the government. On January 22, 1872, on the filing of said map, said lot number four was designated and finally set apart for school purposes, and the law is equally well settled that it thereby became public property to which no title could be acquired by adverse possession. (*Board of Education of San Francisco* v. *Martin,* 92 Cal. 209, [28 Pac. 799].) Therein it is said: "In our opinion there is no reason for not applying the same rule to property which is dedicated or reserved to a public use when the title is held by the municipality as is applicable when it is held by the state. The same principles which prevent an adverse possession from ripening into a title when the title to the property belongs to the public and is held for public use apply in the one case as in the other. It is immaterial where the title, that is the record title, is held, whether by the state at large or by a county, or by some municipal department or other official body. There can be no adverse holding of such land which will deprive the public of the right thereto, or give title to the adverse claimant, or create a title by virtue of the statute of limitations." Other cases declaring the same principle are: *City of Visalia* v. *Elias Jacob,* 65 Cal. 434, [52 Am. Rep. 303, 4 Pac. 433]; *San Leandro* v. *Le Breton,* 72 Cal. 170, [13 Pac. 405]; *County of Yolo* v. *Barney,* 79 Cal. 375, [12 Am. St. Rep. 152, 21 Pac. 833]; *Mills* v. *Los Angeles,* 90 Cal. 522, [27 Pac. 354]; *Orena* v.

*City of Santa Barbara,* 91 Cal. 621, [28 Pac. 268]; *Home for Inebriates* v. *San Francisco,* 119 Cal. 534, 51 Pac. 950].

If it should be deemed that, prior to June 1, 1872, the date of the patent from the United States to Safford, the land was held by an imperfect grant, then the principle would apply that "The fee of lands held under an imperfect grant vests for the first time upon the issuance of the patent, and no length of adverse possession prior thereto will support the statute of limitations." (*Gardiner* v. *Miller,* 47 Cal. 570; *Anzar* v. *Miller,* 90 Cal. 342, [27 Pac. 299]; *Valentine* v. *Sloss,* 103 Cal. 215, [37 Pac. 326, 410].)

Assuming, therefore, that the elements of adverse possession were shown by plaintiff, it seems clear that it can be of no consequence in view of the undisputed facts as to the record title.

We can find in the transcript no legal ground for upholding the judgment in favor of plaintiff, and it is, therefore, reversed, together with the order denying defendant's motion for a new trial.

Chipman, P. J., and Hart, J., concurred.