68 U.S. 104
 17 L.Ed. 569
 1 Wall. 104
 UNITED STATES
v.
SEPULVEDA.
 December Term, 1863
 
 BY acts of Congress, of March 3d, 1851,[1] and of August 31st, 1852,[2] the District Courts of the United States for California, were authorized, on appeal from the Board of Land Commissioners, which body was empowered to settle any claim to land in California that any person might set up by virtue of any right or title derived from the Spanish or Mexican government,—'to decide upon the validity of the said claim.' One of the statutes[3] proceeded to enact for 'all claims finally confirmed by the said commissioners, a patent shall issue to the claimant upon his presenting to the land office an authentic certificate of such confirmation; and a plat or survey of the said land duly approved by the Surveyor-General of California, whose duty,' the act goes on to say, 'it shall be to cause all private claims which shall be finally confirmed, to be accurately surveyed and to furnish plats of the same.' By a third act,—the act of June 14th, 1860,[4]—new powers were given to the District Courts of California, and they now received authority to order into court 'any survey' of private claims, and to decide on it.
 But this act did not in any express terms, perhaps in no terms at all, extend to surveys made prior to its passage, except they happened to be 'surveys previously made and approved by the Surveyor-General, which had been at the passage of the act returned into the District Court, or in relation to which proceedings were then pending for the purpose of contesting or reforming the same;' a class of surveys within which the present one did not come.
 In 1852, Sepulveda and others presented their claim to the board of commissioners for confirmation of a grant which had been made to them under the Mexican government. In 1853 the board adjudged the claim to be valid, and entered a decree for its confirmation. The case having been removed by appeal to the District Court, the attorney-general gave notice that the appeal would not be prosecuted; and upon motion of the district attorney, in pursuance of such notice, the court ordered that the appeal be dismissed, and that the claimants have leave to proceed upon the decree of the commissioners as upon a final decree. The land, the claim to which was thus confirmed, was now surveyed by direction of the Surveyor-General of the United States for California (as one of the statutes already mentioned directs that in such case it may be), and in 1859 the survey was approved by him. In 1860, the District Court, upon the suggestion of the district attorney that the survey did not conform to the final decree, ordered the Surveyor-General to return into court (as the statute of 1860 plainly gave the court authority to do by a certain class of surveys) a plat of this survey. The court, on hearing, held that there was error in part of the survey, and decreed that certain corrections should be made by a new survey. From this decree the case was now brought here by appeal: the principal question raised by the appeal being, of course, the right of the District Court, under the act of June 14th, 1860, to order the correction of a survey made prior to the passage of the act.
 Mr. Wills, in favor of the right, relied on United States v. Fossatt,[5] in this court, as being in point. A motion was made in that case—one similar, in many respects, he remarked, to the present,—to dismiss an appeal; the ground of the motion being that the decrees of the board of commissioners relate only to the question of the validity of the claim, and that by the term 'validity' is meant 'authenticity,' 'legality,' and in some cases, 'interpretation,' but not in any case, 'location,' 'extent,' or 'boundary.' The court asks, 'What are the questions involved in the inquiry into the validity of a claim to land?' and it answers thus: 'It may present questions of the genuineness and authenticity of title, and whether the evidence is forged or fraudulent, or, it may present an inquiry into the authority of the officer to make the grant . . . or, it may disclose questions of the capacity of the grantee to take, or whether the claim has been abandoned or is a subsisting title. But in addition to these questions upon the vitality of title, there may arise questions of the extent, quantity, location, and legal operation, that are equally essential in determining the validity of the claim.' The District Court was accordingly ordered 'to ascertain the external lines of the land.'
 Mr. Justice FIELD delivered the opinion of the court:
 
 
 1
 The jurisdiction of the District Court to supervise and correct the action of the Surveyor-General in this case is not derived from the act of June 14th, 1860. That act applies to surveys subsequently made, with certain exceptions, within which the present case does not fall. The exceptions embrace only those surveys previously made and approved by the Surveyor-General, which had been, at the passage of the act, returned into the District Courts, or in relation to which proceedings were then pending for the purpose of contesting or reforming the same. The jurisdiction is asserted independent of the act of 1860, upon the authority of the decision of this court in the case of the United States v. Fossatt.[6] In that case the decree had been rendered by the District Court, and it was held that the jurisdiction of the court extended not merely to the determination of questions relating to the genuineness and authenticity of the grant presented, and its efficacy in transferring the title, but also to questions relating to its location and boundaries; and that for the settlement of these latter questions, the power of the court over the case did not terminate until the issue of the patent conformably to its decree.
 
 
 2
 Previous to the act of 1860, the jurisdiction of the board and of the District Court, on appeal, was derived entirely from the act of March 3d, 1851, and the act of August 31st, 1852; and when the claims presented were adjudged valid and confirmed, the duty devolved upon the Surveyor-General to cause them to be surveyed. 'For all claims finally confirmed,' says the statute, 'by the said commissioners, or by the said District or Supreme Court, a patent shall issue to the claimant upon his presenting to the General Land Office an authentic certificate of such confirmation, and a plat or survey of the said land, duly certified and approved by the Surveyor-General of California, whose duty it shall be to cause all private claims which shall be finally confirmed to be accurately surveyed, and to furnish plats of the same.' The action of the surveyor in this respect was not in terms made subject to the control of the board or court; it was only made returnable to the Commissioner of the General Land Office at Washington, who was invested, by the previous legislation of Congress, with a general supervision over the acts of all subordinate officers charged with making surveys. Whatever jurisdiction the District Court may have possessed to enforce the execution by the Surveyor-General of its own decrees, it possessed no control over the execution of the decrees of the board.
 
 
 3
 It is true that for the determination of the validity of the claims presented some consideration must have been had of their extent, location, and boundaries. The petitions of the claimants must necessarily have designated, with more or less precision, such extent and location. And where the grants were by metes and bounds, or where proceedings before Mexican authorities, such as took place upon a juridical delivery of possession, had established the boundaries, or where from any other source pending the proceedings for a confirmation the boundaries were indicated, it was proper for the board to declare them in its decrees. And such was the course adopted in numerous instances. But in the majority of cases the grants of the Mexican governors were for a certain specified quantity of land lying within exterior boundaries embracing a much larger tract, and in relation to which no proceedings were ever taken by the former government for its measurement and segregation. In such cases, a confirmation of the claim was only a judicial determination of the right of the claimant to have a specific quantity set apart to him out of a general tract. And the duty of the board was discharged by a confirmation of the claim in the general terms of the grant, leaving the specific quantity designated to be surveyed and laid off by the proper officers of the government, to whom the subject of surveys was intrusted. With the surveys following the decrees of the board the District Court had nothing to do.
 
 
 4
 The surveys of confirmed Mexican grants, particularly when they are for quantities lying within exterior boundaries embracing larger tracts, involve the consideration of various matters, not properly the subject of judicial inquiry. In numerous instances, the location of the quantity confirmed, whether it shall be on one or the other side of the general tract, may depend upon the past or intended action of the government with reference to the surplus. Portions of the general tract may be required, and, therefore, be properly reserved from the location, for public purposes. The act of 1860 creates a new jurisdiction in the court, which cannot be assumed independent of the act, and under it should be exercised only in cases coming clearly within its language.
 
 
 5
 The decree of the District Court revising the action of the Surveyor-General and correcting his survey, must, therefore, be reversed, and the court directed to dismiss the proceedings for want of jurisdiction. If the survey does not conform to the decree of the board, the remedy must be sought from the Commissioner of the General Land Office before the patent issues, and not in the District Court.
 
 
 6
 DECREE ACCORDINGLY.
 
 
 
 [1]
 § viii, &c., 9 Stat. at Large, 631.
 
 
 [2]
 § xii, 10 Id., 99.
 
 
 [3]
 Stat. of March 3d, 1851, § xiii.
 
 
 [4]
 12 Stat. at Large, 33, § 2.
 
 
 [5]
 21 Howard, 447.
 
 
 [6]
 Id., 445.