THOMAS WALLACE MORE v. PETER MASSINI, J. S. GARCIA, CAPT. MORTON, AND NELSON PIERCE

LAND GRANTED BY PATENT.—To ascertain the boundaries of land granted in a patent, the several portions of the patent must be read and construed together.

BOUNDARIES OF CONFIRMED MEXICAN GRANT.—When the decree of the Court confirming a Mexican grant fixes its exterior boundaries by bounding them on some monument, the presumption is that the lines of the survey of the Surveyor General do not extend beyond the exterior limits fixed by the decree.

CONSTRUING DESCRIPTION OF LAND IN DEED.—Courts give effect to every part of the description of land in a deed or patent if possible, but if this cannot be done, they reject that which is repugnant to the general intent of the instrument.

CONSTRUCTION OF DESCRIPTION OF LAND IN PATENT.—If a patent for a confirmed Mexican grant of land recites the decree of confirmation and the plat and certificate of survey of the Surveyor General, giving the courses and distances, and the certificate states that the land confirmed is bounded as therein described, and the decree bounds the land on the sea shore on one side, but the calls and plat of the survey extend from the interior to the sea shore, and then extend along the sea shore in places at and below low tide to a point on the shore, and the patent grants the land described in the survey, the patent will be construed as conveying the land only to the high tide line along the shore.

SEA SHORE AS BOUNDARY.—Land bounded by the sea shore extends only to the high tide line.

APPEAL from the District Court, First Judicial District, Santa Barbara County.

The Mexican Government, in 1846, granted to Daniel A.

Hill one league of land in what is now the County of Santa Barbara. The United States District Court confirmed the grant to said Hill, and the President of the United States issued to him a patent therefor March 10th, 1865. More, the plaintiff, purchased the land from Hill on the 26th day of November, 1864. Where the land fronts on the sea shore, between high and low tide, are mines of asphaltum. The defendants were engaged in mining the asphaltum, and this action was brought to recover damages for mineral already extracted, and to obtain an injunction restraining the defendants from committing waste by continuing their mining operations. The defendants claimed to be working under and in pursuance of the mining customs of California, and denied plaintiff's title to the land below high tide.

The Court below was of opinion that the patent conveyed the land between high and low tide, and gave judgment for plaintiff for damages, and granted a perpetual injunction. The defendants appealed.

The other facts are stated in the opinion of the Court.

*W. H. L. Barnes,* for Appellants.

The courses and distances set forth in the survey do not govern or overrule the natural boundary set forth in the patent, to wit: the sea shore on the south. Where the sea is named as a boundary of land, the line of high water mark is intended wherever the common law prevails. (*United States* v. *Pacheco,* 2 Wallace, 587.) Grants by the Government are to be construed by the common law. It is a settled principle in the English law that the right of soil of owners of land bounded by the sea extends only to high water mark. (3 Kent's Com. 427.) Grants of land bounded by the sea extend to high water mark, and the shores below common high water mark belong to the State. (*Howard* v. *Ingersol,* 13 How. 421; *Gould* v. *Hudson River R. R. Co.,* 2 Seld. 222; 19 N. Y. 528.)

The character of the land in controversy in this case is entirely different from that in *Teschemaker* v. *Thompson*, 18 Cal. 11, and *Ward* v. *Mulford*, 32 Cal. 365. In those cases the claim was to swamp and overflowed lands, reclaimable for agricultural purposes. In this the claim of the plaintiff is for the beach of the Pacific Ocean, not only below ordinary high water mark, but below low water mark and actually into the ocean, under a patent of the United States which bounded his grant by the sea shore. In the present case there were no prior equities in the grantees of the Mexican Government to anything beyond the sea shore. Nor did the patent of the United States award anything beyond the sea shore, unless a survey not conforming to the patent, and manifestly exceeding the calls of the patent, could be said to give it.

*J. P. Hoge,* and *John Reynolds,* for Respondent

In the case of *Teschemaker* v. *Thompson*, the grant which was (as it always is) recited in the patent, designated the Bay of San Francisco as one of the boundaries, and thus, as in this case, the patent designated the sea as a boundary. In either case the beach below high water could only be included in the patent by a survey, running the lines by *courses* and *distances*, so as to embrace it. And it can make no difference that a stake is set by the surveyor at high water mark or low water. The rule that courses and distances must yield to monuments, is not an inflexible one, and is not applicable to a survey and plot, much less to a Government survey. (*Vance* v. *Fore*, 24 Cal. 445.)

The courses and distances of a survey starting from a fixed point on the upland, at a distance from the sea beach, constitute a more certain and stable boundary than the shifting sands of the beach. In fact, they constitute the only permanent and stable boundary on a sea beach.

By the Court, RHODES, J.:

In *Teschemaker* v. *Thompson*, 18 Cal. 11, it was admitted that the patent of the United States to the plaintiffs embraced the lands in controversy; and the lands in dispute in *Ward* v. *Mulford*, 32 Cal. 365, were within the lines of the survey, and were embraced by the patent from the United States. Were that the position of the lands in dispute in this case, the authority of those cases would be decisive of this. But the question here is, whether the lands in controversy—that is to say, the lands below the line of ordinary high tide of the Pacific Ocean—are embraced within the patent. When the patent was offered in evidence, the defendants objected to its admission on the following grounds: "That the patent, on its face, did not purport to grant to Hill any right or title below the line of high water mark on the sea shore; that, for the purposes of this action, it is immaterial and irrelevant as proof, except as to sustain title to that portion of the premises above the line of high water mark." The patent recites the decree of confirmation of the Board of Land Commissioners and of the District Court of the Southern District of California, in which the land is described as "bounded on the south by the sea shore, on the north by the foot of the ledge of mountains," etc.; and recites, also, the plat and certificate of survey of the Surveyor General for California, in which he certifies that the tract of *land confirmed to the claimant* is bounded and described as therein stated. The portion of the survey material to the question before us is as follows: "Thence, fourth, south sixty-four degrees, thirty minutes west, fifteen chains to main sea shore * * * ; thence, fifth, south seventy-six degrees forty-five minutes east, along sea beach twenty-eight chains to station; thence, sixth, south eighty-nine degrees thirty minutes east, to station; thence, seventh, south eighty-eight degrees thirty minutes east, twenty-nine chains to station; thence, eighth, north eighty-three degrees thirty minutes east, fifteen chains and thirty-seven links to Asphaltum Spring Station; thence,

ninth, north fifty-nine degrees thirty minutes east, fifteen chains to station; thence, tenth, north eighty-eight degrees east, thirty-four chains to station; thence, eleventh, south eighty-four degrees fifteen minutes east, at thirty-eight chains ascends bluff thirty-nine chains fifty-five links to a redwood post marked G No. 2, for course second station; thence, twelfth, north leaving sea shore and over gently rolling land," etc. The patent grants "the tract of land embraced and described in the foregoing survey."

To ascertain the land granted, the several portions of the patent must be read and construed together. The land confirmed is bounded on the south by the sea shore, and the land included within the line of the survey will also be held to be bounded on the south by the sea shore, unless the calls imperatively demand other boundaries. When the decree of confirmation fixes the exterior bounds of a rancho, whether it is one granted with specific boundaries, or one of a specific quantity within a larger area, the presumption is that the lines of the survey coincide with, or at least do not extend beyond, the exterior limits or bounds of the decree, for the survey is not an independent act, but is an act performed under the decree, and preparatory to its being carried into effect by a patent. Courts will give effect to every part of the description of premises in a deed or grant, if it is possible, consistently with the rules of law; but if this cannot be done, they reject that which is repugnant to the general intent of the instrument. It appears by the plat that, following the *courses and distances* of the survey, portions of the sea will be included in the lines of the rancho. This is inconsistent with the calls of the decree of confirmation, which confirms a tract bounded by the sea shore. It is a general rule in the construction of grants and deeds of conveyance, containing descriptions of the premises, one part of which is inconsistent with or repugnant to another, that visible local objects or monuments mentioned in the conveyance will control both courses and distances. The survey mentions the sea shore as the termination of the fourth

course, and the twelfth course commences at the sea shore, but at the intermediate stations no visible object, nor any monument, either natural or artificial, is mentioned. The call for the sea shore as the southern boundary must be regarded as the more definite and certain, " and will prevail over a call for a mere station," and over the courses and distances.

Judgment reversed and cause remanded for a new trial.

Mr. Chief Justice Sawyer expressed no opinion.