## PINKERTON v. LEDOUX.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 114. Argued December 7, 1888. — Decided February 4, 1889.

The report upon a Spanish or Mexican grant by the surveyor general of New Mexico under the act of July 22, 1854, § 8, 10 Stat. 308, which required such report to be "laid before Congress for such action thereon as may be deemed just and proper, with a view to confirm *bonâ fide* grants," is no evidence of title or right to possession.

In ejectment, the question whether the tract in dispute is within the boundaries of a grant of public land, is to be determined by the jury on the evidence, as explained by the court.

When the description in the petition and grant of a Mexican grant differs from the description in the act of possession the former must prevail.

If, from the description and words in the petition and writ of possession of a Mexican grant the jury cannot definitely locate the boundaries of the grant, they must find for the defendant.

Whether the Nolan title has any validity without confirmation by Congress, *quære*.

Whether the proviso in the act of July 1, 1870, 16 Stat. 646, that when the grants to Nolan to which it related " are so confirmed, surveyed and patented, they shall be held and taken to be in full satisfaction of all further claims or demands against the United States," was not intended to affect the entire claim of Nolan for any grant of lands in New Mexico, *quære*.

EJECTMENT. Judgment for defendant. Plaintiff sued out this writ of error. The case is stated in the opinion.

*Mr. F. W. Clancy* for plaintiff in error.

*Mr. Henry E. Davis* for defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is an action of ejectment brought by Pinkerton, the plaintiff in error, to recover from the defendants, Julian Ledoux and Epifanio Ledoux, the possession of a quarter section of land claimed to be within the tract known as the Nolan grant in Colfax and Mora counties in New Mexico, under

which grant the plaintiff claims title; and the main question
in the case is, whether the Nolan grant extends far enough
westerly and northerly to embrace the lot in question. The
action was commenced in July, 1881, in Colfax County, and
was afterwards removed to Mora County. The property
claimed is described in the declaration as follows, to wit:
"that certain tract and parcel of land lying and being situated
in the county of Colfax, in the Territory of New Mexico, and
being a portion of that larger tract of land commonly known
as and called the 'Nolan grant,' (and which said grant was, on
or about the eighteenth day of November, A.D. 1845, made by
Manuel Armijo, then Governor of the Territory of New
Mexico, to Gervacio Nolan and two others,) being the same
one hundred and sixty acres of land upon which the said
defendants now reside and occupy, and upon which they have
a dwelling-house wherein the said defendants or one of them
reside, situated on the northwest third of the above-mentioned
grant and bounded upon all sides by lands of the plaintiff."

The defendants pleaded not guilty and three special pleas.
First, title in themselves by virtue of an entry and a grant
from the United States, under which they have erected and
placed upon the premises certain valuable improvements, con-
sisting of dwelling-houses, barns, fences, ditches, etc., of the
value of $5000, which value they give notice that they will
prove at the trial, if the plaintiff shall maintain his title. Sec-
ondly, that they built the valuable improvements on the land
before the commencement of the action, and that the plaintiff
cannot deprive them of possession until such improvements
are paid for. Third, not guilty within ten years.

The plaintiff took issue on those pleas, and entered a *nolle
prosequi* as to Julian Ledoux. On the trial of the cause the
plaintiff gave in evidence, 1st, the original Nolan grant, consist-
ing of the petition for a concession, dated November 15, 1845;
the grant upon the same, indorsed thereon and dated Santa
Fé, November 18, 1845; and the act of juridical possession,
dated November 30, 1845. The petition was made by Ger-
vacio Nolan, Juan Antonio Aragon, and Antonio Maria Lucero,
soliciting a grant for a piece of land in the little cañon of Red

river, bounded "on the north by the possession of Messrs. Miranda and Beaubien; on the south one league in a direct line, including the Sapello river, according to its current; on the west another league from Red river and its current; and on the southeast the little hills of Santa Clara with their range to the little cañon of the Ocate." The grant was made as desired, with the boundaries and limits asked for. The act of juridical possession describes the boundaries as follows: "They are, on the north, the lands of Don Gaudalupe Miranda and Don Carlos Beaubien; on the south, one league south of the Sapello river, following the same range; on the east, one league east of the Red river, with the same range of the river; and on the west, the little cañon of Ocate and five hundred varas west of the little hills of Santa Clara in a direct line." No plat or desiño was shown to have been annexed to the act of juridical possession. If there had been one, it was not given in evidence.

It must be acknowledged that these descriptions are somewhat vague. It would seem that, from the northern boundary, adjoining Miranda and Beaubien, (or the Maxwell grant,) to the southern boundary along the Sapello river, the distance is about forty miles; and if the grant extends westerly from the Red river far enough to embrace the land in question, as claimed by the plaintiff, the general width is from twenty-one to twenty-five miles; the whole tract thus embracing an area of nearly one thousand square miles; whilst, if it is confined to one league west of the Red river, as would seem to be the meaning of the original petition and grant, the quantity would still be over one hundred square miles.

The plaintiff then gave in evidence, without objection on the part of the defendant, the opinion of the Surveyor General, dated July 10, 1860, reporting on the grant in question, and stating that he believed the documents of title to be genuine, and the grant to be good and valid, and that the land embraced within the boundaries set forth in the petition and juridical possession were severed from the public domain, and that the title therefor was vested in the heirs and legal representatives of Gervacio Nolan; he therefore approved said title,

and transmitted it for the action of Congress, in accordance with the 8th section of the act of July 22, 1854, entitled "An act to establish the offices of Surveyor General of New Mexico, etc." 10 Stat. 308, c. 103. The act says, "which report shall be laid before Congress for such action thereon as may be deemed just and proper, with a view to confirm *bona fide* grants, and give full effect to the treaty of 1848, between the United States and Mexico." It does not appear that this title was ever approved or confirmed by Congress. The plaintiff then offered in evidence (but the court rejected) the petition of the claimants of the grant, addressed to the Surveyor General, in order to show what boundaries they claimed on that occasion. It is unnecessary to recite the contents of this petition, as we think the court rightly rejected it. The Surveyor General, when referring in his report to the boundaries set forth in the petition and juridical possession, evidently referred to the boundaries contained in the original petition of Nolan and his associates for the grant, and not to the petition addressed to himself.

The plaintiff then introduced in evidence a map from the Surveyor General's office, which was not admitted as evidence of the boundaries of the grant in question, nor to show any survey thereof, but only to inform the jury as to the location and position of natural objects and course of streams referred to in other documents. The material part of the map was as follows, to wit:

It shows the Nolan grant to be about 40 miles in length, north and south, and 25 miles in width, extending across the the whole of Mora County, and five or six miles into Colfax County on the north and San Miguel County on the south. In the northwestern part of the Nolan grant, as marked on the map, on Ocate creek, some 16 miles west of the Red river, is shown a ranch. On the west side of the grant, about midway between the north and south bounds, are situated the little hills of Santa Clara. No proof was offered with regard to the authenticity or accuracy of this map, except that it was brought from the Surveyor General's office. Very little testimony was offered. Mary McKellar testified that she lived in Colfax County in the ranch noted on the map; that Ledoux's place (the land in question) was about a mile and a half to the northeast of her ranch, two or three miles south of Beaubien and Miranda's grant; that she knew where the stones were put by Mr. Shaw, as the western boundary of the Nolan grant. He was the surveyor sent up from Santa Fé to survey the land. Mr. Ledoux's house is to the east of that line, as surveyed by Mr. Shaw. She also testified about the little hills

of Santa Clara, and the location of the canoncito of the Ocate. Ledoux was examined to show that he was in possession of the lot claimed in the suit. The plaintiff was examined to identify the locality of the little hills of Santa Clara, and the canoncito of the Ocate, and where a line would run, beginning 500 varas west of the hills and running a straight line through the canoncito, and that the defendant lives to the east of that line. He did not know how many canoncitos were on the Ocate. There might be one near Red river; he never was there. He also located the county line between Mora and Colfax Counties. He had only known the country since 1875.

The defendant's counsel admitted that the plaintiff had acquired all the title of the original grantees, in and to the western half of the grant to the north of the Santa Clara hills. The defendant also introduced in evidence a map to show the various localities, position of natural objects, streams, etc., which showed substantially the same state of facts as the map introduced by the plaintiff. This was all the evidence in the cause.

The plaintiff then requested the court to instruct the jury as follows :

"That when a claim to a Spanish or Mexican grant has been favorably reported by the Surveyor General of New Mexico, as the one here in question has been, the grantees, or their heirs or assigns, are entitled to the absolute and exclusive possession of the land embraced within the limits of such grant; and in this case it is admitted that the plaintiff has all the right, title and interest of the original grantees to all that portion of said grant north of an east-and-west line running through the Serritos de Santa Clara and west of a northwest and southeast line half way between the east and west boundaries of said grant."

And the court refused to give said instruction, and the plaintiff excepted.

We think the refusal was right. The Surveyor General's report is no evidence of title or right to possession. His duties were prescribed by the act of July 22d, 1854, before referred to, and consisted merely in making inquiries and reporting to

Congress for its action. If Congress confirmed a title reported favorably by him it became a valid title; if not, not. So with regard to the boundaries of a grant; until his report was confirmed by Congress, it had no effect to establish such boundaries, or anything else subservient to the title.

The judge charged the jury that they must be satisfied from a preponderance of evidence that the defendant was within the boundaries petitioned for by Nolan, and into which he was inducted by the writ of possession, and if not so satisfied, they must find the defendant not guilty; that they must determine what the boundaries are from the words used in the petition and in the writ of possession; that if, from the description thus given, and from the extraneous evidence furnished by plaintiff, they were not convinced that the defendant was upon the land petitioned for and given by writ of possession to the said Nolan, they must find defendant not guilty. If, upon the other hand, they were satisfied from all the evidence that the defendant was upon said land, they must find him guilty.

The judge then compared the words of boundary and description contained in the petition with those contained in the writ or act of possession, and added:

"If, upon comparing these descriptions, you cannot make them agree, you must give the greater weight to the words and descriptions of the petition, for the petition must control the writ. In other words, the writ of possession must conform to the petition, for the grant was made according to the boundaries prayed for in the petition. You would not be justified in going 500 varas west of Los Serritos de Santa Clara for the western boundary of the grant, unless you find some authority for doing so in the words and descriptions of the petition. If, from the descriptions and words in the petition and writ of possession, you find yourselves unable definitely to locate the boundaries of the grant, you must find defendant not guilty."

Then, at the request of the plaintiff, the judge charged: "2. That if they believe from the evidence that the land of which the defendant is in possession is within the limits of the

grant, which has been favorably reported by the Surveyor General, they must find the defendant guilty."

He then charged as follows: "3. The plaintiff can only recover, if at all, on the strength of his own title or right of possession, and not on the defects of any title or right of possession of defendant.

"4. The plaintiff must establish his right to the possession of the land described in the petition or declaration by competent evidence in order for him to recover.

"5. In order to find the defendant guilty, you must find that the defendant did enter upon the land described in the petition or declaration; that the same is within the boundaries of the portion of the grant claimed by plaintiff, and that the defendant was, at the time this suit was instituted, in possession of the same wrongfully, withholding and detaining the same from the plaintiff."

The plaintiff excepted to the giving of each of said instructions, with the exception of the one numbered 2.

The jury, under this charge, rendered a verdict for the defendant, and judgment was entered accordingly; whereupon the plaintiff brought this writ of error. The assignment of errors corresponds to the exceptions. The plaintiff in error, in his brief, discusses two points upon which he insists upon a reversal of the judgment: 1. That there is nothing in the evidence to support the verdict; 2. That the instructions of the court did not properly submit to the jury the only point to be determined, to wit: Was the defendant within the boundaries of the portion of the grant claimed by the plaintiff?

We do not see how the judge who tried the cause could have more clearly stated, than he did in his charge, the real question to be determined by the jury, namely, the question whether the land in dispute was included within the boundaries of the grant, as applied to and sought for, in the actual condition of the country, its surface and mountains and streams. In order to locate a grant of land upon the surface of the earth there must be evidence to show that the place of location agrees with the description in the grant, and that

evidence is for the jury. The plaintiff alleges that it was error in the judge to leave this question to the jury. We think not. The judge may properly explain to the jury the effect of different portions of the evidence, and, of course, if the jury find a verdict against plain evidence, their verdict will be set aside.

The plaintiff complains, however, that the judge laid down an erroneous rule in charging that if the description contained in the petition and grant differed from that contained in the act of possession, the former must prevail, because it was the grant which conferred title. We think there was no error in this charge. If the officer assigned to deliver possession does not follow the grant his acts are not valid.

Where the original grant does not locate the subject of the grant, as where a certain number of square leagues is granted to be located within a certain district, the delivery of possession within the district renders the title complete, and defines the location of the grant.

The cases referred to by the plaintiff were grants of specific ranches, plantations or places, having well known names, and the boundaries designated in the acts of possession ascertained their actual extent and limits; and hence were controlling when the question of title arose. "The judicial possession was conclusive as to the boundaries and extent of the land granted." *United States* v. *Pico,* 5 Wall. 536, 540.

The instruction given, that if from the descriptions and words in the petition and writ of possession the jury could not definitely locate the boundaries of the grant, they must find for the defendant, is supported by several explicit authorities. In *Carpentier* v. *Montgomery,* 13 Wall. 480, it was held that where one of the boundaries was so uncertain that it could not be defined or designated, the grant was void. The same rule was followed in *Scull* v. *United States,* 98 U. S. 410, where the description was so vague that, as sought to be interpreted by the claimant, it would embrace over seven millions of acres; and it was evident to the court that the surveyor was never actually on the ground, and was mistaken as to the locality of the natural objects on which he relied for description. The claim was rejected for uncertainty of description.

We see nothing in the charge of which the plaintiff can properly complain.

This case seems to have been very perfunctorily tried and discussed. There is a question which may be entitled to much consideration, whether the Nolan title has any validity at all without confirmation by Congress. The act of July 22, 1854, before referred to, seems to imply that this was necessary. There is also another act of Congress which may have a bearing on the case. We refer to the act of July 1, 1870, 16 Stat. 646, c. 202, by which another grant to Nolan was confirmed to the extent of eleven leagues. After various provisions with regard to the exterior lines of those eleven leagues, the 4th section declares " that upon the adjustment of said claim of the heirs of Gervacio Nolan, according to the provisions of this act, it shall be the duty of the Surveyor General of the district to furnish properly approved plats to said claimants, etc. : *Provided*, that when said lands are so confirmed, surveyed and patented, they shall be held and taken to be in full satisfaction of all further claims or demands against the United States."

Whether this provision was not intended to affect the entire claim of Nolan for any grant of lands in New Mexico may be a serious question. Without expressing any opinion on the subject, it suffices to say that we see no error in the judgment of the Supreme Court of New Mexico, and it is therefore

*Affirmed.*