[No. 14014.  In Bank. — September 14, 1891.]

CASSIE L. FOSS ET AL., APPELLANTS, *v.* JOSEPH HINKELL, RESPONDENT.

MEXICAN GRANT — EXTERIOR BOUNDARIES — PAROL EVIDENCE — APPEAL — LAW OF THE CASE — NEW FACTS IN RECORD — SPECIFIC GRANT.— A former appeal was determined upon the findings alone, upon a record showing that the land in controversy was within the "claimed exterior limits" of a Mexican grant, but not disclosing that the grant was specific or had been made so by juridical possession.  The judgment was reversed, with direction to the court below to make a finding as to whether the land was within the exterior boundaries of the grant "as granted by the Mexican government," which the opinion stated "must be determined by the expediente of the grant, including petition, diseño, and grant, the boundaries in which may be identified by parol evidence." The court was also directed to determine the issue "on the testimony already introduced, and such further testimony as may be introduced by either party."  The record upon a second appeal showed that the grant was of a tract of which the Mexican government had given juridical possession, with specific boundaries, and that it had been confirmed and patented with the same boundaries.  *Held*, that it cannot be presumed upon the second appeal that the court upon the former appeal intended to determine or limit the character of the "further testimony" to be introduced by either party, or that the character of the grant was determined as the law of the case.

ID. — BOUNDARIES OF SPECIFIC GRANT — JURIDICAL POSSESSION. — Where juridical possession was given by the Mexican government of a tract granted by it, the only lands granted are those within the natural boundaries fixed by the juridical possession.

ID. — MERGER OF DISEÑO. — The diseño is merged in the act of juridical possession, for all purposes connected with the grant, and ceases thereafter to have any function in determining the land that was granted.

ID. — CONFIRMATION OF SPECIFIC GRANT — PUBLIC LANDS. — Where the decree of confirmation specifically describes the lands by the same natural boundaries as those designated in the act of juridical possession, it becomes a final determination by the United States that these boundaries were the exterior limits of the grant, and that the lands outside of those limits were, so far as the claimants were concerned, public lands, and at no time thereafter are such lands sub judice.

ID. — SURVEY — PATENT. — The decree of confirmation is a finality as to the boundaries which it specifies; and though a subsequent survey is necessary to delineate the natural boundaries upon the surface of the earth with relation to the sectional lines of the government surveys before the patent can issue, the issuance of the patent is the authentic record that those lines thus delineated were the correct boundaries of the grant as made by the Mexican government.

ID. — EVIDENCE OF ORIGINAL BOUNDARIES — DISEÑO — REJECTED SURVEY FOR PATENT. — The act of juridical possession, the decree of confirmation in which the land confirmed was specifically described, and the patent issued thereon describing the same land are conclusive evidence to determine the exterior boundaries of the land as granted by the Mexican government; and no subsequent survey, nor the evidence of any surveyor, is competent to defeat the effect of such evidence, or to show that the diseño or a rejected survey for a patent had different limits.

ID. — LANDS SUB JUDICE — EXCLUSION FROM RAILROAD GRANT — CLAIMS OF EXTERIOR LIMITS — PENDENCY OF REJECTED SURVEY.— Lands claimed to be included in a Mexican grant, and finally excluded from the survey and patent, are not sub judice so as to be reserved and excluded from the operation of a railroad grant, unless the claim to them is pending and undetermined before some tribunal competent to pass upon its validity, and unless the lands are within the exterior limits of the grant. The mere claim that lands are within the exterior limits of the grant, based upon a rejected survey for a patent, made after a final decree of confirmation has fixed the specific boundaries of the grant contrary to the survey, does not render the lands sub judice until the final rejection of such survey.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinions rendered upon the present appeal and upon the former appeal, reported in 78 Cal. 158.

*Edwin Baxter*, for Appellants.

*Will D. Gould*, and *James H. Blanchard*, for Respondent.

Harrison, J. — Upon the former appeal in this case (78 Cal. 158), the cause was remanded, with directions to the court below "to find on the testimony already introduced, and such further testimony as may be introduced by either party, whether or not the land in suit was, on the third day of April, 1871, within the exterior boundaries of the rancho San José as granted by the Mexican government, and on such findings to enter judgment." In pursuance of this direction, the court, upon such evidence as was offered upon this issue at the subsequent trial, found "that the land in suit was, on the third day of April, 1871, within the exterior boundaries of the rancho San José as granted by the Mexican government," and rendered judgment for the defendant. Plaintiffs moved for a new trial, and from the order denying their motion, as well as from the judgment, they have appealed to this court.

It is insisted upon the part of the respondent that this court, by the following language, used in its opinion upon the former appeal, viz., "What the exterior limits of such granted rancho were must be determined by the expediente of the grant issued by the Mexican government, including petition, diseño, and grant, the boundaries designated in which may be identified by parol evidence," thereby limited the testimony upon which the court below was to make its finding upon this issue. These were, however, words of definition, rather than of enumeration, and must be read in connection with the subsequent direction to the court to make its finding "on the testimony already introduced, and such further testimony as may be introduced by either party."

The former appeal, although taken from the judgment and order denying a new trial, was heard and determined upon the findings alone; and as the "testimony already introduced" was not then before this court, it cannot be

presumed that it intended to make any reference to the character of the evidence already taken, or to limit the character of the "further testimony" which might be introduced by either party for the purpose of enabling the court below to make its finding upon this issue. It then appeared from the findings that on the third day of April, 1871, the date when the route of the Southern Pacific railroad was definitely located, the land in question was within the "*claimed* exterior limits" of a valid Mexican grant of the rancho San José, and by reason thereof was *sub judice*. This finding was based upon another finding, that by the Thompson survey, made in 1868, the lands in controversy were included within the exterior limits of said rancho until said survey was rejected in 1875; while by the Hancock survey, which had been previously made, and which was afterwards substantially approved and a patent thereon issued in 1875, the lands were excluded from the exterior limits of the rancho. This court, in its opinion, held that whether the land in controversy was *sub judice* was the ultimate fact which the court below should have found, saying: "The exterior limits of the rancho do not depend on any survey made of it." The record then before this court did not disclose the character of the grant, — whether it was a grant of quantity within exterior limits, or a grant of a specific tract, either by name or with definite boundaries; and the court, in its direction, did nothing more than indicate that the issue could be found upon any competent evidence.

By the record which is now brought before us on this appeal, it appears that the grant was of a specific tract of which juridical possession had been given by the Mexican government, and that the final decree of confirmation by the United States was of the land embraced within the boundaries described in said juridical possession. From the testimony before the court, it appeared that in April, 1837, the Mexican government made a grant to Ygnacio Palomares and Ricardo Vejar of the "place called San José," and that in August of that

year juridical possession thereof was given them, with the following specific boundaries, viz.: "Commencing at the foot of a black willow tree, which was taken for a corner, and between the limbs of which a dry stick was placed in the form of a cross; thence from east towards the west nine thousand seven hundred varas to the foot of the hills called Las Lomas de la Puente, taking for a landmark a large walnut tree on the slope of a small hill on the side of the road which passes from the said San José to La Puente, making a cut (*caladura*) on one of its limbs with a hatchet; thence in a direction about from south to north ten thousand four hundred varas to the arroyo (creek) of San José, opposite a high hill, where a large oak was taken as a boundary, in which they fixed the head of a beef, and chopped some of its limbs; thence in a direction from west to east ten thousand six hundred varas to the arroyo (creek) of San Antonio, taking for a corner some young cottonwood trees which are near each other, marking crosses in the bark; thence about from north to south nine thousand seven hundred varas to the foot of the black willow, the place of beginning."

In 1852, the grantees presented to the land commission their petition for a confirmation of the grant, and on the 31st of January, 1854, the commission adjudged the claim to be valid. From this decision the United States took an appeal to the district court for the southern district of California, and that court affirmed the decision of the land commission, in its decree specifically designating the lands of which confirmation was made by the same boundaries as those given by the act of juridical possession. The attorney-general having given notice that the United States would not prosecute an appeal therefrom, the district court, at its December term, 1858, decreed that the claimants might proceed upon its said decree as upon a final decree, and thereafter, viz., January 20, 1875, a patent for said lands was issued to the claimants.

Upon this testimony, as soon as it was shown to the court that the land in controversy is not included within

the lines of the patent, the court should have found that it was not, on the third day of April, 1871, "within the boundaries of the rancho San José *as granted* · by the Mexican government."

The only lands which were "granted" by the Mexican government are those which were included within the natural boundaries fixed by the juridical possession. That was a segregation or location by the Mexican government, and a determination by that government of the land within the limits of the diseño which it had granted, and was binding upon this government. "By this proceeding — called, in the language of the country, the delivery of juridical possession — the land was separated from the public domain, and what was previously a grant of quantity became a grant of a specific tract. The record of a proceeding of this nature must necessarily control the action of the officers of the United States in surveying land claimed under a confirmed Mexican grant." (*Graham* v. *United States*, 4 Wall. 259.) "This proceeding involved an ascertainment and settlement of the boundaries of the lands granted by the appropriate officers of the government specially designated for that purpose, and has all the force and efficacy of a judicial determination to bind the former government, and is equally binding upon the officers of our government." (*United States* v. *Pico*, 5 Wall. 536.) "Where the original grant does not locate the subject of the grant, as where a number of square leagues is granted to be located within a certain district, the delivery of possession within the district renders the title complete and defines the location of the grant. The cases referred to by the plaintiff were grants of specific ranches, plantations, or places having well-known names, and the boundaries designated in the acts of possession ascertained their actual extent and limits, and hence were controlling when a question of title arose." (*Pinkerton* v. *Ledoux*, 129 U. S. 346.) In the decree of confirmation rendered by the district court, these lands were specifically described by the same natural boun-

daries as those designated in the act of juridical posses-
sion, and this decree was a final determination by the
United States that these boundaries were the exterior
limits of the grant, and that the lands outside of those
limits were, so far as the claimants were concerned, pub-
lic land. "Where the grant was by metes and bounds,
or where proceedings before the Mexican authorities,
such as took place upon a juridical delivery of possession,
had established the boundaries, or where from any other
source, pending the proceedings for a confirmation, the
boundaries were indicated, it was proper for the board
to declare them in its decrees." (*United States* v. *Sepul-
veda,* 1 Wall. 104.) Where the decree of confirmation
is by metes and bounds, the survey must conform to the
decree. (*Higueras* v. *United States,* 5 Wall. 827.) "The
decree is a finality, not only on the question of title, but
as to the boundaries which it specifies." (*United States*
v. *Halleck,* 1 Wall. 439.)

The subsequent survey upon which the patent was
issued was the ascertainment of these natural boun-
daries. It was necessary that they should be delineated
upon the surface of the earth, with their relation to the
sectional lines of the government surveys, before the
patent could issue; but the issuance of the patent upon
the lines of that survey became the authentic record that
those lines were the correct boundaries of the grant as
made by the Mexican government. Although the patent
was not issued until 1875, yet the boundaries of the land
for which it was issued were definitely fixed when the
district court rendered its decree of confirmation, and at
no time thereafter was the land in question *sub judice.*

This evidence, viz., the act of juridical possession, the
decree of confirmation, in which the land confirmed was
specifically described, and the patent issued thereon, was
conclusive upon the court in determining the issue be-
fore it. All the other evidence that was offered could
have no weight or effect in impairing its conclusiveness.
By the expediente it appeared that the land granted was
a place *within* the boundaries of the diseño; and after the

juridical possession was given, the diseño ceased to have any function in determining the land that was granted, but, for all purposes connected with the grant, was merged in the act of juridical possession. Neither the Hancock survey nor the Thompson survey, nor the evidence of any surveyor, was competent to defeat the effect of the patent, or to show that any lands not included therein had been granted by the Mexican government, for the reason that it had already been established by the decree of the court that only the lands embraced in the patent had been so granted.

It may be observed with reference to the testimony of the surveyors Moore and Bernell, that they did not testify that the land in question was within the boundaries of the juridical possession or of the land described in the decree of the district court, their testimony being that it was within the limits of the diseño, the map of partition, and the Thompson survey.

It is urged by the respondent that notwithstanding it appears from the terms of the decree of confirmation as well as from the patent that the rancho San José "as granted" did not include the land in controversy, yet the grant including this land was *sub judice* until the final rejection of the Thompson survey, for the reason that it was included therein, and therefore was *claimed* to be within the exterior limits of the grant.

We cannot assent to this proposition. Lands are not *sub judice* unless the claim to them is pending and undetermined before some tribunal competent to pass upon their validity. The question of the extent to which a claim for lands under a Mexican grant would render them *sub judice* was discussed in *Doolan* v. *Carr*, 125 U. S. 618, and in the opinion of the court in that case Justice Miller says: "Those Mexican claims were often described, or attempted to be described, by specific boundaries. They were often claims for a definite quantity of land within much larger out-boundaries, and they were frequently described by the name of a place or ranch. To the extent of the claim, when the grant

was for land with specific boundaries, or known by a particular name, and to the extent of the quantity claimed within out-boundaries containing a greater area, they are excluded from the grant to the railroad company. Indeed, this exclusion did not depend upon the validity of the claim asserted, or its final establishment, but upon the fact that there existed a claim of a right under a grant by the Mexican government, *which was yet undetermined,* and to which, therefore, the phrase 'public lands' could not attach, and which the statute did not include, although it might be found within limits prescribed on each side of the road when located."

From this opinion it will be seen that the claim, in order to render the land *sub judice,* must be based upon a right yet undetermined, and must also be limited to the lands within the boundaries of the grant, whether it be for quantity or for a specific tract. The mere claim that lands are within the exterior limits of a grant, after there has been a final determination that they are not so included, will not make them *sub judice.* As a claim for lands outside of the exterior boundaries of a grant of quantity would have no effect, so where the grant is for a place with specific boundaries, no right can be created by a claim for lands not included within those boundaries. In the ordinary case of a grant of quantity within exterior limits, the claim will embrace all the lands within those boundaries, until the segregation of the quantity which was granted by the Mexican government; for until then, although the validity of the claim has been established, its extent has not been fixed. In *United States* v. *McLaughlin,* 127 U. S. 428, it was held that in such a case the treaty obligations of the government are satisfied so long as it reserves within these exterior limits a quantity sufficient to satisfy the claim, and that in the mean time the United States may make valid grants of the residue. When, however, the grant is of all the land within certain natural boundaries, or when juridical possession with natural boundaries has been given of the land granted, the claim must be limited to the land

within those boundaries, and when the boundaries, as well as the validity of the grant, have been determined by the decree of confirmation, the claim is thereafter limited to those boundaries.    By such decree the claim passes into a judgment, and the subsequent survey is but the execution of that judgment.  (*Fossat* v. *United States,* 2 Wall. 649.)  In the present case, the lands in controversy are more than a mile distant from the lines established in the decree, and there could be no *bona fide* claim that they could be included within any survey of the grant as defined in the decree of confirmation.

It follows that after the decree of confirmation of the rancho San José became final, in 1858, no claim under that grant to any lands outside of the boundaries named in the decree would render them *sub judice,* or prevent their passing to the railroad company on the third day of April, 1871, as a portion of the public land granted to it by the United States.

The judgment and order denying a new trial are reversed, and the cause is remanded, with directions to the court below to make the finding, directed by this court at the former trial, in conformity with the principles contained in this opinion, and thereupon to enter judgment.

Paterson, J., Garoutte, J., and Beatty, C. J., concurred.

McFarland, J., dissenting. — I dissent, and adhere to the opinion rendered in Department, February 2, 1891, affirming the judgment.  On the former appeal (78 Cal. 158), this court reversed the judgment, with directions to the court below to find on the one issue whether the land in contest was within the exterior boundaries of the rancho San José as granted by the Mexican government; and it stated certain principles by which the lower court should be governed in determining that issue.    The court below followed those directions and was governed by those principles, and found that said land *was* within

said boundaries; and I do not think that the evidence was insufficient to support that finding.

It may be the law that the exception in railroad grants applies only to Mexican grants, which expressly designate a certain *quantity* of land within larger exterior boundaries; and it may be that in other cases where the boundaries named in the original grant are uncertain and vague, although the grant has been in good faith claimed, possessed, and recognized up to certain lines for more than a quarter of a century, still the railroad grant will take all that is excluded from the final United States patent. The opposite views of this question are fully presented in the two separate opinions of Judges Sawyer and Ross (involving this same San José grant), in *United States* v. *S. P. R. R. Co.*, 14 Saw. 620; and I do not think that it has been yet definitely settled by *Doolan* v. *Carr*, 125 U. S. 618, or any other adjudicated case. But that question need not be discussed in the case at bar, for the law of this case was declared on the former appeal. I think that the judgment should be affirmed.

The following is the decision rendered in Department Two, February 2, 1891, above referred to in the dissenting opinion of Justice McFarland:—

McFarland, J. — This is an action of ejectment. Judgment went for defendant, and plaintiffs appeal. Plaintiffs claim title under a United States patent to the Southern Pacific Railroad Company dated April 4, 1879, and a deed from said company to plaintiffs dated June 20, 1887. Defendant claims as a pre-emptor, contending that at the date of the definite location of the Southern Pacific railroad, which was on or about April 3, 1871, the land in contest was within the exterior limits of the San José rancho, a valid Mexican grant, and was therefore reserved from the grant to the railroad company. There was a former trial of this case, and a former appeal. At that trial the court made certain findings, and gave judgment for plaintiffs. On appeal,

this court determined most of the questions involved favorably to defendant (*Foss* v. *Hinkell*, 78 Cal. 158), and the decision of this court then made as to those questions has become the law of the case. But this court reversed the judgment for want of a finding whether or not the land was within the exterior boundaries of said rancho. The court below had found that according to a survey called the "Thompson survey," the land was within said boundaries, and that according to a survey called the "Hancock survey," it was not; and this court, in its opinion, said: "The exterior limits of the rancho do not depend on any survey made of it. The land sued for may be within such exterior limits, though excluded from the survey. Though Hancock may have excluded this land from his survey, it still may be within the exterior boundaries of the rancho as granted by the Mexican government. What the exterior limits of such granted rancho were must be determined by the expediente of the grant issued by the Mexican government, including petition, diseño, and grant, the boundaries designated in which may be identified by parol evidence. (See *Doolan* v. *Carr*, 125 U. S. 618.)" And for this defect in the findings the judgment was reversed, and the cause remanded, " with directions to the court below to find, on the testimony already introduced, and such further testimony as may be introduced by either party, whether or not the land in suit was, on the third day of April, 1871, within the exterior boundaries of the rancho San José as granted by the Mexican government, and on such findings to enter judgment." And so when the case went back to the trial court, there was only one issue — the one last above stated — to be determined. When the case was heard again in the trial court, that court, following the said directions of this court, found "that the land in suit was, on the third day of April, 1871, within the exterior boundaries of the rancho San José as granted by the Mexican government," and gave judgment accordingly for defendant; and it is evident that the judgment must stand, unless the court com-

mitted material errors in ruling upon the admissibility of evidence, or unless the said finding is not supported by the evidence.

Appellants took certain exceptions to the admission of certain evidence; but the point is not pressed in the brief, and — especially when we consider what was decided when the case was here before — we see no error on this point.

The main contention of appellants is, that the finding is not supported by the evidence. Their counsel argue that the court must have found the land in suit to be within the exterior boundaries of the rancho, simply because it was claimed that said boundaries included said land. But there was introduced in evidence the original petition, the expediente, the diseño, the act of juridical possession, various maps, decrees, and proceedings, and also oral testimony of witnesses as to the exterior boundaries of the rancho. It would be a useless labor here to review all this evidence. It is sufficient to say that after a full consideration of the evidence we are not prepared to say that the court was not warranted in finding that the land in suit was within the exterior limits of the San José rancho "as granted by the Mexican government." The judgment and order denying a new trial are affirmed.