[No. 15432.   Department Two.—June 26, 1894.]

THOMAS B. VALENTINE, RESPONDENT, v. LOUIS SLOSS ET AL., APPELLANTS.

MEXICAN GRANT—TIDE LANDS—CONCLUSIVENESS OF PATENT—CONTROL OF DECREE.—Where a decree of confirmation under a Mexican grant followed the language of the grant bounding the land upon the bay of San Francisco, and the survey and the patent extended beyond the line of extraordinary high tide, and to ordinary high tide, so as to include tide lands claimed by the defendants under patents from the state, the survey and patent will control as to the land granted by the United States, and entitle a plaintiff claiming under that patent issued to the confirmees of the grant to recover the tide lands in controversy.

ID.—EVIDENCE—DELIVERY OF JURIDICAL POSSESSION—CONTRADICTION OF PATENT.—Evidence of delivery of juridical possession is not admissible to control the effect of the patent of the United States confirming a Mexican grant.

ID.—VOID APPROVAL OF SURVEY.—The district court had no jurisdiction to affirm a survey of a Mexican grant which was approved by the surveyor general before the passage of the act of June 14, 1860.

ID.—STATUTE OF LIMITATIONS.—The statute of limitations does not begin to run against the confirmee of a Mexican grant until the patent has been issued.

APPEAL from a judgment of the Superior Court of Marin County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Mullany & Grant*, and *R. Percy Wright*, for Appellants.

The natural boundaries in the decree of confirmation, one of which is the bay of San Francisco, control the courses and distances in the patent. (*More* v. *Massini*, 37 Cal. 432; *Jones* v. *Martin*, 13 Saw. 317; *De Guyer* v. *Banning*, 91 Cal. 402; *People* v. *San Francisco*, 75 Cal. 388.) The officers of the United States land-office, when they issued a patent for the Corte de Madera del Presidio grant, and included these swamp and overflowed lands in it, undertook to convey lands not within their control, and not then owned by the United States, and the patent, as to the swamp and overflowed lands, therefore, was void for want of authority to issue it. (*Polk* v. *Wendall*, 9 Cranch, 87; *Doolan* v. *Carr*, 125 U. S.

618; *Wright* v. *Roseberry*, 121 U. S. 488.) The court erred in sustaining the objection of the plaintiff to the introduction in evidence of the record of the delivery of juridical possession. (*More* v. *Massini*, 37 Cal. 436; *Brown* v. *Huger*, 21 How. 305.) The court erred in sustaining the objection of the plaintiff to the introduction in evidence of the record of the decree of the United States district court, approving and confirming the survey of the Mexican grant, as it was admissible to show the invalidity of the patent for want of authority to issue it, and because of the absence of power to act on the subject matter purporting to be conveyed by it. (*Doolan* v. *Carr*, 125 U. S. 618; *Wright* v. *Roseberry*, 121 U. S. 488; *Polk* v. *Wendall*, 9 Cranch, 87; *New Orleans* v. *United States*, 10 Pet. 702, 731; *Chicago Quartz Min. Co.* v. *Oliver*, 75 Cal. 194; 7 Am. St. Rep. 143; *Southern Pac. R. R. Co.* v. *McCusker*, 67 Cal. 67; *McLaughlin* v. *Heid*, 63 Cal. 208; *McLaughlin* v. *Powell*, 50 Cal. 64.)

*Lindley & Eickhoff*, for Respondent.

The boundary of the bay of San Francisco is to be construed to mean the line of ordinary, and not extraordinary, high-water mark. (*United States* v. *Pacheco*, 2 Wall. 587; *Jones* v. *Martin*, 13 Saw. 315; *Teschemaker* v. *Thompson*, 18 Cal. 11; 79 Am. Dec. 151; *Ward* v. *Mulford*, 32 Cal. 365; *United States Land Assn.* v. *Knight*, 85 Cal. 448.) Assuming that there was a conflict between the recitals in the decree of confirmation and the survey described in the patent, the survey must control. (*Chipley* v. *Farris*, 45 Cal. 539; *City of San Diego* v. *Allison*, 46 Cal. 168; *Younger* v. *Pagles*, 60 Cal. 525; *People* v. *San Francisco*, 75 Cal. 397.) The patent is conclusive evidence of the survey and its conformity with the confirmation. It cannot be collaterally assailed. (*Moore* v. *Wilkinson*, 13 Cal. 488; *De Guyer* v. *Banning*, 91 Cal. 402; *San Francisco* v. *Le Roy*, 138 U. S. 656; *Knight* v. *United States Land Assn.*, 142 U. S. 161.) The ruling of the court sustaining the objection of the plaintiff to the introduction in evidence of the delivery of juridical

possession was proper, as the offer of this evidence was for the sole purpose of attacking the patent, and showing its invalidity so far as it affected the marsh lands. (*United States* v. *Halleck*, 1 Wall. 439.) The ruling of the court refusing to permit the introduction in evidence of the decree of the district court approving the "Mathewson survey" was proper, as the department of the interior retained exclusive control of this class· of surveys, and the district court had no jurisdiction. (*United States* v. *Sepulveda*, 1 Wall. 104.)

The COURT.—This is an action brought to recover possession of land under section 738 of the Code of Civil Procedure.

Plaintiff claims title derived from the heirs of Juan Read, who received a grant from the Mexican government. His claim was presented to the board of land commissioners, and by them confirmed. Patent issued to the confirmees February 25, 1885, and this action was commenced February 21, 1890.

This appeal is from an order denying defendants' motion for a new trial made upon a statement of the case. The statement contains the following:

"It appeared from other documentary evidence introduced that all of the right, title, and interest of John Read, Hilaria Read, and Ynez Read in the land described in the complaint herein had vested in the plaintiff before the commencement of this action.

"It was admitted by all of the parties to the action that all of the land described in the complaint in this action lies, and is included, within the boundaries by courses and distances as given in said patent, and as surveyed and delineated on the plat attached thereto.

"It was admitted, on behalf of the plaintiff, that all of the land described in the complaint lies between the line of extraordinary high tide and the line of the ordinary high tide of the waters of the bay of San Francisco, as the same existed on the second day of October, 1834, and on the seventh day of July, 1846."

It appears from the recitals contained in the patent that the claim was confirmed by the board of land commissioners June 13, 1854. In the decree of the commission the land of which confirmation was made was described as follows:

" Commencing from the solar which faces west, at a point at the slope and foot of the hills which lie in that direction and on the edge of the forest of redwoods called Corte de Madera del Presidio, and running from thence in a northwardly direction four thousand five hundred varas to an arroyo called Holon, where is another forest of redwoods called Corte de Madera de San Pablo; thence by the waters of said arroyo and the bay of San Francisco ten thousand varas to the Point Tiburon, said point serving as a mark and limit; thence running along the borders of said bay, and continuing in a westerly direction along the shore of the bay formed by Point Caballos and Point Tiburon, ·four thousand seven hundred varas to the mouth of the Canada and the point of the 'Sausal,' which is near the estero lying east of the house on said premises, which was occupied by said Juan Read in November, 1835, and thence continuing the measurement, from east to west, along the east line eight hundred varas to the place of beginning, containing one square league of land, be the same more or less."

This decree was approved by the circuit court on appeal January 14, 1856. The survey upon which the patent was based was approved by W. H. Brown, United States surveyor general for the district of California, March 24, 1883.

The field notes of the survey are set out at length in the patent, and the grant therein contained recites that the United States has granted, and does give and grant, to Juan Read and others " the tract of land embraced and described in the foregoing survey."

1. Appellants' first point is that the patent, rightly construed, does not include any portion of the salt marsh described in the complaint. It is admitted that the

land described in the complaint is included within the boundaries by courses and distances, as given in the patent, and as surveyed and delineated on the map attached thereto. As the patent conveyed by express reference the land described in the survey, the admission leaves no room for this argument.

2. The second point seems to be the same differently stated. It is said that natural boundaries control courses and distances. The decree describes the land as bounded by the shore of the bay of San Francisco; that by the civil law, which controlled in Mexico, that line was the line of extraordinary high tide. It is stipulated that the land described is between the line of extraordinary high tide and ordinary high tide. The patent contains a copy of the decree, and the survey purports to describe the same land. The survey, it is admitted, includes all the tide lands, but it is said that it shows where the lines cross the line which divides the uplands from the tide lands, " so that the patent itself affords an accurate description of the land confirmed to the grantee by the district court, by simply rejecting the courses and distances after the salt marsh commences, and until the line of extraordinary high tide is reached, and following the Mexican shore of the bay of San Francisco between the two points."

It is contended that the rule laid down in *More* v. *Massini*, 37 Cal. 432, determines in favor of defendants, that the line of the survey does not extend beyond what counsel are pleased to call the "Mexican shore." The cases, however, are not alike. 1. There were indications in the case of *More* v. *Massini* that the survey was intended to be bounded by the beach. Here there is no mistaking the fact that the survey was intended to pass the line of the "Mexican shore"; 2. The decree was rendered in a common-law court, and the language used must be given the meaning attached to it by the common law; and 3. The "Mexican shore" is not shown to be a visible and obvious natural boundary or monument.

3. The third point is, that the officers of the United

States land-office had no authority to issue a patent for the tide lands, because these lands are plainly not included in the decree of confirmation.

This question has been so often determined, and the decisions are so uniform, that it can no longer be deemed open for discussion. The following are some of the cases: *Moore* v. *Wilkinson,* 13 Cal. 478; *Chipley* v. *Farris,* 45 Cal. 527; *People* v. *San Francisco,* 75 Cal. 388; *De Guyer* v. *Banning,* 91 Cal. 400; *San Francisco* v. *Le Roy,* 138 U. S. 656; *Knight* v. *United States Land Assn.,* 142 U. S. 161.

4. It is contended that the court erred in sustaining plaintiff's objection to the introduction in evidence of the delivery of juridical possession.

The correctness of this ruling is shown by *United States* v. *Halleck,* 1 Wall. 439, and *Younger* v. *Pagles,* 60 Cal. 525.

5. The last point made is that the court erred in not permitting the defendants to introduce in evidence the decree of the United States district court approving the Mathewson survey.

This survey was made by R. C. Mathewson, deputy United States surveyor general for California, in 1858, and was approved by J. W. Mandeville, United States surveyor general for the district of California, September 19, 1859. It included only four thousand four hundred and sixty and twenty-four one-hundredths acres, which was about the quantity called for in the grant, to wit, one square league Spanish measure. It did not include any portion of the demanded premises. The patent includes seven thousand eight hundred and forty-five and twelve one-hundredths acres, which is nearer two leagues Spanish measure than one.

The Mathewson survey was ordered into the United States district court September 18, 1860, upon exceptions to it made at that date by the heirs of Juan Read. The exceptions were disposed of September 28, 1865, at which time the court approved the Mathewson survey. June 14, 1860, an act was passed by Congress giving the

district court jurisdiction, upon the application of any party interested, to order any such survey and plat into court, and after due notice and proceedings to approve or disapprove of the survey, and to direct a modification, and it was provided that "the plat and survey so finally determined by publication, order, or decree, as the case may be, shall have the same effect and validity in law as if a patent for the land had been issued by the United States."

If the district court had jurisdiction to affirm the Mathewson survey it would seem to follow that the decree of confirmation was thereby satisfied, or would be by the issuance of a patent in conformity with it, and that the land-office of the United States had no authority to issue letters patent for any other land.

Unfortunately, however, for appellants, the Mathewson survey was approved by the surveyor general before the passage of the act of June 14, 1860, and at that time there were no proceedings pending for the purpose of contesting or reforming the same. Section 6 of the act limited its operation, so far as surveys theretofore approved were concerned, to those which had been returned to the court, or those in which proceedings were then pending for the purpose of contesting or reforming the same.

This section was construed in *United States* v. *Sepulveda,* 1 Wall. 104, in such way as to show that the district court had no jurisdiction, and therefore the decree was void. The ruling was therefore correct.

The statute of limitations was plead, and in a separate brief on the part of certain defendants it is contended that plaintiff's claim is barred, notwithstanding the fact that the suit was commenced within five years after the issuance of the patent; because, it is said, plaintiff and his grantors could at all times have maintained ejectment upon this title. This position finds some support in the first decision in *San Jose* v. *Trimble,* 41 Cal. 536. The views first announced in that case were modified on rehearing, and were practically re-

pudiated in *Gardiner* v. *Miller*, 47 Cal. 570, since which decision it has been uniformly held that the statute does not begin to run until the issuance of the patent. It is not necessary to say what would have been the effect upon the bar of the statute had there been a valid decree approving the survey under the act of Congress of June 14, 1860.

The judgment and order are affirmed.

Hearing in Bank denied.

BEATTY, C. J., with whom concurred VAN FLEET, J., dissented from the order denying a hearing in Bank, and filed the following opinion on the 26th of July, 1894:

I dissent from the order denying a rehearing of this cause, and from the judgment of the Department. The district court had jurisdiction to hear exceptions to the Mathewson survey, and to confirm it, independent of the act of Congress of 1860. It had this jurisdiction by virtue of the fact that the decree confirming the grant was its own decree, and not, as in the case of *United States* v. *Sepulveda*, 1 Wall. 104, the decree of the land commission. This case also differs from the Sepulveda case in the important fact that the grant was not a floating grant within extensive and indefinite boundaries, but was a grant of a tract with specific boundaries, and, therefore, peculiarly and appropriately subject to definite location by the court according to the doctrine of *United States* v. *Fossatt*, 21 How. 445, and the cases therein cited. The Fossatt case was cited in the Sepulveda case, and so far from overruling it, the court took especial pains to set forth the distinction upon which they held that in the Sepulveda case the district court could acquire jurisdiction to correct the survey only under the act of 1860.

I think the judgment of the superior court should have been reversed.